WITTKOWSKY & RINTELS *v.* W. F. WASSON.

Whether there be *any* evidence, is a question for the Judge. Whether it is *sufficient evidence,* is a question for the jury.

A *scintilla* of evidence will not justify the Judge in leaving the case to the jury. There must be evidence from which the jury might reasonably come to the conclusion that the issue was proved.

A sale is a transfer of the absolute or general property in a thing for a price in money. The price must be certain; and there can be no executed sale, so as to pass the property, when the price is to be fixed by agreement between the parties afterwards, and the parties do not agree.

(*State* v. *Vinson,* 63 N. C. Rep. 335; *Jordan* v. *Lassiter,* 6 Jones 130; *State* v. *Revels,* Busb. 200; *Sutton* v. *Madre,* 2 Jones 320; *Cobb* v. *Fogleman,* 1 Ired. 440; *Devane* v. *Fennell,* 2 Ired. 36, cited and approved.)

BYNUM, J. *Dissenting.*

CIVIL ACTION, for the recovery of certain goods, with process of "claim and delivery," against the defendant, sheriff of Iredell, who claimed to hold said goods under certain executions against Shepperd & Wycoff, to whom the goods had belonged, tried before *Mitchell, J.,* at Spring Term, 1874, of IREDELL Superior Court.

It was in evidence for the plaintiffs, that they were creditors of Shepperd & Wycoff, to the amount of about $1,000; and that they sent their agent with an attachment to levy on the stock of goods; that the agent went to the store of Sheppard & Wycoff, accompanied by a deputy sheriff; found Shepperd in possession, and told him of their judgment and attachment, and of his intention to levy the attachment on the goods, but added, that if a satisfactory arrangement could be made, he would not levy. Shepperd expressed a desire to made an arrangement and prevent the levy. The agent then proposed to buy the stock of goods, or so much thereof, as might be necessary in payment of the debt. To this Shepperd assented, *provided,* they could agree on the price.

The agent, as a witness for plaintiffs, stated that he then offered Shepperd for the goods, what they cost. Shepperd re-

fused, demanding an advance on prime cost, of ten *per cent.* or more, which he refused to give. That they then commenced inventorying the goods, he, the agent, putting down the cost of each article; that they had proceeded but a little way in this, when Shepperd became angry, and said he could not stand such prices, when they stopped the inventory; and he and Shepperd agreed to box up all the goods without an inventory, and haul them to Troutman's depot, on the A. T. & O. R. R., next morning, which was Thursday; that on the next Monday, Shepperd was to go down with the goods to Charlotte, and there agree on the price with Wittkowsky; and if they agreed, the debt of the plaintiffs was first to be paid out of the price, and the remainder paid over to Shepperd for the benefit of his other creditors in Charlotte. That they accordingly boxed up the goods, and they were hauled to the depot, where the depot agent was told that the goods were to go to the plaintiffs, in Charlotte, and that Sheppard was to go down with them, on Monday. That at the store of Sheppard & Wycoff, with the assent of Shepperd, he, the said agent, sold a small lot of guano and a pair of counter-scales to the depot agent, and received the money for those things.

It was admitted by the defendant, that he had seized the goods at the depot, on Monday night after they were taken there; and he showed several executions and judgments against Shepperd & Wycoff, in favor of various parties under which he had seized them. One of the judgments and executions being in favor of the plaintiffs on the same debt, for which they allege they had bought the goods, the said judgment being for the full amount of the debt, with no credit entered for said goods, and bearing date after the time of the alleged purchase of the goods by their agent.

It was also in evidence for the defendant, that at the time he made the said levies on Monday night, Wittkowsky, one of the plaintiffs, was present, urging defendant to levy this execution of his firm, on the goods along with his other executions; and that he then set up no claim to the goods; that the sheriff le-

vied the plaintiffs' said execution on the goods, as the property of Shepperd & Wycoff, having no notice of plaintiffs' claim as purchasers. That several days after the levy, the plaintiffs served a notice on defendant, that when he sold said goods under the said executions, they claimed that he should apply " it *pro rata* part" of the proceeds to their execution.

The defendant had no notice that plaintiffs claimed said goods by any purchase from Shepperd & Wycoff, or either of them, until the service of the process in this case upon him, which was a short time before the sale under the executions. That Wittkowsky, after the levies on Monday night, had complained, that if his agent had levied his attachment, as he directed him to do, it would have prevented all the trouble.

Wittkowsky, and another for him, testified that on the said Monday night, when the levies were made, he first offered his executions to the defendant and demanded that he should levy them on the goods; that when the defendant refused to do so, until he had first levied the executions which he had already in his hands, he, Wittkowsky, then claimed the goods as his own, and forbid the defendant's levying thereon; that after defendant had levied his other executions, he again offered him his executions and demanded a levy; that defendant took the executions, levied them, dating the levy six minutes after those of the other executions.

Defendant offered to prove by Shepperd, that on Saturday morning after the goods had been carried to the depot the evening previous, he, Shepperd, went to the depot, and ordered the Railroad agent not to send the goods to Charlotte, but to hold them up at the depot. To this evidence, the plaintiffs objected. His Honor admitted it, and the plaintiff excepted.

Under the instructions of his Honor, the jury returned a a verdict for the defendant. Judgment accordingly, and appeal by the plaintiffs.

*Furches*, for appellants.
*Folk & Armfield*, contra.

RODMAN, J. As the Judge instructed the jury to find a verdict for the defendant, he must be taken to have decided that there was *no* evidence of a sale of the goods to the plaintiff. Where there is *any* evidence to support a plaintiff's claim, it is the duty of the Judge to submit the question to a jury, who are the exclusive judges of its weight. This doctrine must have been a part of the law from the earliest times at which the respective functions of the Judge and jury were discriminated. The earliest distinct expression of it that I know of was by BULLER, J., in Company of Carpenters, &c., 1 Doug. 375. "Where there be any evidence is a question for the Judge. Whether sufficient evidence is for the jury."

Since then it has been repeated innumerable times. Of course, after a while it became a question as to what was the meaning of the phrase, "*any* evidence." Did it mean the slightest scintilla of evidence, or such only as that from which a jury might *reasonably* infer the existence of the alleged fact. The latter view has been adopted in this State and in England, and so far as my researches have extended, in other States generally. This was the view taken by this Court in *State* v. *Vinson*, 63 N. C. Rep. 335, upon the authorities there cited. In addition to those are the following cases in this State, which speak an uniform language : *Jordan* v. *Lassiter*, 6 Jones 130 ; *State* v. *Revels*, Busb. 200 ; *Sutton* v. *Madre*, 2 Jones 320 ; *Cobb* v. *Fogleman*, 1 Ired. 440.

There is a recent case in the English Court of Exchequer Chamber, which puts the doctrine so clearly as to excuse a quotation. The question in that case was, whether certain articles which had been sold to an infant were necessaries. WILLES, J., says: "There is in every case a preliminary question which is one of law, viz : whether there is any evidence on which the jury could properly find the question for the party on whom the *onus* of proof lies. If there is not, the Judge ought to withdraw the question from the jury and direct a non-suit if the *onus* is on the plaintiff, or direct a verdict for the plaintiff if the *onus* is on the defendant. It was

formerly considered necessary in all cases to leave the question to the jury if there was any evidence, even a *scintilla,* in support of the case; but it is now settled that the question for the Judge (subject, of course, to review,) is, as stated by MAULE, J., in *Jewell* v. *Parr,* 13 C. B. 916; 76 E. C. L. R., not whether there is literally no evidence, but whether there is none that ought reasonably to satisfy the jury that the fact sought to be proved is established. In *Toomey* v. *London and Brighton R. W. Co.,* 3 C. B. N. S. 150, (91 E. C. L. R.,) WILLIAMS, J., enunciates the same idea thus : " It is not enough to say that there was some evidence—a scintilla of evidence clearly would not justify the Judge in leaving the case to the jury. There must be evidence on which they might reasonably and properly conclude that there was negligence "—the fact in that case to be established. And in *Wheelton* v. *Hardisty,* 8 E & B. 262, (92 E. C. L. R.,) in the considered judgment of the majority of the Court, it is said : " The question is, whether the proof was such that the jury would reasonably come to the conclusion that the issue was proved ?" This, " they say," is now settled to be the real question in such cases by the decisions in the Exchequer Chamber, which have, in our opinion, so properly put an end to what had been treated as the rule, that a case must go to the jury if there were what had been termed a scintilla of evidence." *Ryder* v. *Wombwell,* (1868) L. R. 4 Exch. 32. By thus quoting from recent English cases we do not mean to extend or alter any rule of practice or evidence heretofore recognized in this State. The great importance of this understanding of the phrase, " any evidence," will be seen by considering it as it may be applied in criminal actions.

The question then is, was there any evidence in this case of a sale of the goods in question to the plaintiffs. A sale is defined by Benjamin as " a transfer of the absolute or general property in a thing for a price in money." To the completion of this contract, as of all others, there must be the mutual assent of the parties to its terms. Such mutual assent cannot

exist unless the terms are definite. The thing sold must be ascertained. Until the specific thing is agreed on, the agreement can only be executory. Benjamin on Sales, 227–8.

And for a like reason, the price to be paid must also be certain, or some guide must be agreed on by which it can be found with certainty. There may be a sale for a reasonable price, in which case, if the party afterwards differ, the price must be made certain by the verdict of a jury. Or there may be a sale at a price to be afterwards fixed by valuers. In such case, if the valuers refuse to fix the price, the sale is considered incomplete or else as rescinded by the refusal. If, indeed, the thing sold has been delivered to the vendee and consumed, so that the parties cannot be put *in statu quo*, the vendee is liable for a reasonable price. Benjamin on Sales, 69 ; *Clarke* v. *Westroppe*, 18 C. B. 765. But there cannot be an executed sale so as to pass the property where the price is to be fixed by agreement between the parties afterwards, and the parties do not afterwards agree. One element of a sale is wanting, just as a different element would be if the thing were not ascertained. If in such case the thing was actually delivered and consumed, the vendee would be liable, not upon the special imperfect contract, but on an implied contract to pay a reasonable price. In *Devane* v. *Fennell*, 2 Ired. 36, it is said that if upon a contract for the sale of goods anything remains to be done by the vendor to ascertain the price, &c., the sale is incomplete, and if the actual possession has been delivered to the vendee, it is still constructively in the vendor.

To apply these principles to the evidence for the plaintiff in the present case : The plaintiffs being creditors of Wyckoff & Shepperd, sued out an attachment against them, and sent a deputy sheriff and another person as their agent, to the store of Wycoff & Shepperd. The attachment was not levied and no claim is set up on that account. The agent proposed to take the goods in question, or as much of them as might be required for the purpose, in payment of the plaintiffs' debt, but he and Shepperd did not agree upon the price. There-

upon, as the case states the testimony of the agent, who was a witness for plaintiffs, "the agent and Shepperd agreed to box up all the goods without an inventory, haul them to Trout-man's depot on the A., T. & O. R. R., next morning, which was Thursday; that on the next Monday Shepperd was to go down with the goods to Charlotte and agree on the price with Wittowsky, and if they agreed, the debt to plaintiffs was first to be paid out of the price and the remainder paid over to Shepperd," &c.

The goods were accordingly hauled to the depot and the agent of the Railroad Company was told that they were to go to plaintiffs at Charlotte, and that Shepperd was to go with them. The plaintiffs' agent, with the consent of Shepperd, sold some guano and a set of counter scales which were at the store, and before the goods were carried to the depot, and received the price. The goods were not sent to Charlotte, but remained at the depot; no price was afterwards agreed on between plaintiffs and Shepperd, and on Monday night they were levied on by the defendant as sheriff.

In all the transaction, we think there is no evidence of an executed sale; nothing from which it could be reasonably or fairly inferred that it was the intent of the parties to it to transfer the absolute property in the goods to the plaintiffs.

There may be a doubt as to who had actual possession and control of the goods while at the depot, whether the plaintiffs or Shepperd. That question is not assumed either way, and no stress is put on it. But if the goods had happened to have been burned at the depot and Wycoff & Shepperd had sued the plaintiffs for the price as on an executed sale, by what rule would the price have been ascertained? Not by any furnished by the contract between the parties, which shows that the contract was incomplete.

PER CURIAM.            Judgment affirmed.

READE, J. I assented to the decision as delivered in the

opinion of brother Rodman, upon the explanation therein, that it was not to be interpreted as an innovation upon the established rule, that the jury are the sole judges of the weight of evidence without any intimation of opinion on the part of the Judge.

BYNUM, J., *dissenting*. I concur in the judgment of the Court, because, in my opinion, there was *no* evidence offered tending to establish a sale, but on the contrary, the evidence disproved the idea of a sale altogether.

But I do not concur in the propositions laid down as the principles of evidence, in this State, or in the line of demarkation drawn between the rights of the Court and the rights of the jury in the administration of justice. I regard these propositions now distinctly announced for the first time, in our Courts as new, opposed to a long line of uniform decisions, and as subversive of that bulwark of all our individual rights, to wit, the right of trial by jury.

The opinion delivered admits the rule of evidence as announced in 1 Greenl., sec. 49, to wit, that " whether there be any evidence or not, is a question for the Judge; whether it is sufficient evidence, is a question for the jury," but undertakes to give a construction to " any " which destroys the plain meaning of a plain word and thus introduces the new and dangerous proposition contended for. It is now announced that the true meaning of " any evidence " is that it must be such " as ought *reasonably* to satisfy the jury that the fact sought to be established is proved." That it is not enough to say that there was some evidence, but it must be evidence on which they might *reasonably* and *properly* come to the conclusion to be arrived at.

The very cases relied on admit that the rule now set up is a new one, established by a train of late English decisions, and that they have overturned the long established law of evidence, that if there was any evidence—even a *scintilla*—it was necessary, in all cases, that it should go to the jury. Now, when

did this confessedly new doctrine of the Courts of England become the law in North Carolina, and what decisions of our own Courts have formerly announced this innovation? The *State* v. *Vinson,* 63 N. C. Rep., is cited as having done so. That case certainly does not profess to establish the rule contended for, but after laying down the true principle, as well understood in our State, and as governing that case, the Court *obiter* proceeds thus: " We may go farther and say, that the evidence must be such as will support a reasonable inference of the fact in issue." A new proposition of such importance, announced in this tentative language, cannot be held as an authoritative exposition of the law. The *State* v. *Vinson,* has not met the approbation of the profession, and as an authority I think it must be confined to the case decided. It professes to be governed by the previous decisions of this Court, and so far as it may be inconsistent, it must give way to a long line of uniform adjudications upon this very question.

The rule laid down and uniformly adhered to in all the other cases, when properly understood, is that " where there is any evidence tending to establish a material fact in issue, the weight and sufficiency of the evidence are solely for the jury." So far has this Court gone in support of this rule, that in *McRae* v. *Morrison,* 13 Ired. 48, the Court say, that " the *impression* of a witness who professes to have any recollection at all, is certainly some evidence ; the degree of weight to which it is entitled is a matter for the jury." And in the instructive case of the *State* v. *Allen,* 3 Jones, 257, where the question is thoroughly discussed, the Court say, " Where there is a defect or entire absence of evidence, it is the duty of the Judge so to instruct the jury, but if there be any competent evidence, relevant and tending to prove the matter in issue, it is the true office and province of the jury to pass upon it, although the evidence may be so slight that any one may exclaim, ' Certainly no jury will find the fact upon such insufficient evidence.' Still the Judge has no right to put his opinion in the way of

the free action of the jury." And the Court there deprecates any error that may have crept into our practice, by reason of our Court not having attached due importance to the distinction between the condition of things in England, where the Courts are allowed to express to the jury their opinion of the weight and sufficiency of testimony, and the condition of things in our State, where the trial by jury is protected both by the Constitution and by legislative enactment. "In all controversies of law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable." Constitution, Art. 1, sec. 19. And to carry into effect this fundamental principle, it is provided, C. C. P., sec. 237, that "no Judge shall give an opinion, in his charge to the jury, whether a fact is fully or sufficiently proved, such matter being the true office and province of the jury." When our organic law has thus announced that the trial by jury is an institution to be cherished by every free people, as the best safeguard to their lives and property, and as such must remain sacred and inviolable, and when by legislative act the line of distinction is so clearly drawn between the rights of the Court and the jury, it becomes the solemn duty of this Court, while preserving its own rights, to be equally zealous to see that the Court shall commit no usurpation upon "the true office and province of the jury."

How the jury, whose exclusive province it is, can pass upon the "weight and sufficiency" of the testimony, when the Court may exclude it from their consideration altogether, because the evidence offered seems to it not "reasonably sufficient" to establish the fact sought to be proved, is to me, incomprehensible. The very weight and sufficiency must depend upon its reasonableness, and to say that the jury shall consider the weight and sufficiency of that testimony only, which the Court may consider reasonable and proper to produce belief in their minds, is in substance and effect to say that the *quantum* of evidence required by the jury to produce belief in their minds, is a ques-

tion for the Court. The proposition thus broadly stated, of course, cannot be maintained, and will not be affirmed by any one, yet it is the logical and inevitable sequence of the doctrine advanced in the opinion of the Court. *Cobb* v. *Fogleman*, 1 Ired., 440, is in harmony with these views, and the distinction is there drawn between " defect of evidence and evidence confessedly slight;" and in Allen's case, *Cobb* v. *Fogleman*, is reviewed, and defect of evidence is explained to be a failure of evidence or no evidence at all, but that any evidence, however slight, cannot be withheld from the jury, and this illustration is put: " it is proved that goods are found in the possession of the prisoner, twelve months after the larceny was committed; every one would say, this is not sufficient evidence to convict ; but yet it is some evidence. And in the same case it is held, that a fact, calculated to form a link " in the chain, although the other links are not supplied, is, nevertheless, *some* evidence tending to establish the fact in issue, and its sufficiency must be passed on by the jury." Upon what principle, then, can the Court assume to pass upon the reasonableness of evidence to produce belief, and admit or reject it, as it may take the one or the other view of it ? And upon what principle can it exclude any, even a *scintilla* of evidence, from the jury ? A *scintilla* of evidence is *some* evidence, for it is a *scintilla* of evidence; and if the law is administered, it *must* go to the jury, and the Court has no more power to withhold it, than to withhold the most positive material fact offered in evidence. The theory of the books is, and every practitioner knows, that the very slightest oral testimony before the jury, from the demeanor, character and surround'ngs of the witness, may, and often does, become potent and convincing proof. How then can this Court, which can only see the *recorded* testimony, which is no transcript of the living and visible evidence, as it appeared to the jury, and justly determined their verdict, undertake to say that the evidence was not reasonably sufficient to produce belief?

The truth is, that whenever we depart from the plain letter of the law, and long and uniform interpretations of the law, we throw doubt and distrust upon its administration.

The Court and jury are distinct and independant, though co-operating tribunals, with this difference, that the jury is the especial favorite, and its rights are carefully surrounded by the solemn guarantees of the Constitution, as well as the laws. The rightful jurisdiction of the jury, then must be protected and enforced against every encroachment, open or concealed, as the one dearest to a free people.

It is admitted that the later English cases, cited in the opinion of the Court, do establish the principle asserted in the opinion, and the same principle may be found in some of the American cases, but it will be found that in all such cases the Court claims and exercises the right of expressing to the jury its opinion as to the weight and sufficiency of the evidence, a claim sternly forbidden by our Constitution and laws. Even in our State, the Courts have at times, prone to follow English precedents and forgetful of the injunction of our organic and statutory laws, deviated somewhat from the true principle here contended for, but these deviations have seldom occurred and have afterwards been acknowledged and corrected, as in Allen's case; and upon the whole, the Judiciary of North Carolina, while maintaining its own just rights, has vindicated the ancient and time honored jurisdiction and privileges of the jury, as the trier of facts.