E. F. YOUNG v. WILMINGTON AND WELDON RAILROAD COMPANY.

*Warehouseman — Ordinary Care — Negligence — Trial— Evidence.*

1. Where goods were held in a railroad company's warehouse, at owner's risk and for his convenience, the company was no longer liable as a common carrier but only for want of ordinary care as a warehouseman, and the owner of the goods, in an action for the value of the same, should be required to prove negligence as a part of his case.

2. A trial Judge is not required to submit a case to the jury unless there is something more than a scintilla of evidence upon which a jury can properly proceed to find a verdict for the party introducing it upon whom the burden of proof lies.

3. In an action against a railroad company to recover goods burned in its warehouse, evidence that a night telegraph operator, who had an office in a room adjoining the warehoue, and slept therein, was intemperate in his habits and was drunk on the night of the fire, does not justify a verdict for the plaintiff.

This is an ACTION which was commenced before a Justice of the Peace, in which the plaintiff claimed damages for the destruction of certain goods and merchandise which were burned in the defendant's warehouse, at Dunn, North Carolina.

The justice rendered judgment in favor of the plaintiff from which the defendant appealed to the Superior Court. The case came on for trial at November Term, 1894, of HARNETT Superior Court, before *Bynum, Judge,* and a jury.

The plaintiff introduced the following testimony:

P. J. Jeffreys, testified as follows: I was the agent of defendant, at Dunn, in April, 1894, and am still the agent.

The defendant's warehouse was burned, at Dunn, on the morning of April 13th, 1894, defore daylight. The defendant had a night operator there at the time. His place of business was in the telegraph office, in the warehouse at night. He stayed there about a week after the fire, when they sent another operator there. Young's goods were in the warehouse at the time of the fire, and were destroyed by it.

#### CROSS-EXAMINED.

The goods had been in warehouse for sometime. They were received about the 5th of February, 1894, and had been in the warehouse ever since. The freight had been paid upon them and no charge was made for storage. The operator was a night operator; his only duty was to run the telegraph lines at night. He slept in a room in

the warehouse, but had nothing whatever to do with the freight in the warehouse. The company kept a night operator at Dunn only from January the first to about May the first of each year. They did so on account of the fast passenger trains which were run over the road during those months. The warehouse was securely locked on the night of the fire. I do not know what caused the fire, but I believe it was accidental. The room of the night operator was cut off from the warehouse. The company had a lot of its own property in the warehouse at time of the fire which was also destroyed.

### RE-DIRECT.

The office was partitioned off from the warehouse and a door opened from the office into the warehouse. We kept our stove wood in the warehouse, and made the hands bring it out into the office. I do not remember positively locking up the door between the office and the warehouse that night, but I always did it. The operator did not have a key to that door, but I left mine in the office at night.

E. F. Young, the plaintiff in this action, testified: I never received payment for my goods. They were worth one hundred and sixty-four and 50-100 dollars; that was what I paid for them. I also paid $5.25 freight.

I knew Galloway, the night operator. I went to the fire; it was about 4 o'clock in the morning. Galloway was not there; he came about half an hour after I got there. The office was full of smoke when I got there and I could not go in it.

### CROSS—EXAMINED.

The end of warehouse next to office was full of smoke, the other end was not.

I did not take my goods out of the warehouse before the fire because I was not ready for them.

There was a disputed point about them. I paid the freight with the understanding they were to stay there until I called for them. The agent never asked me to move them.

B. F. M. Coates:

I knew Galloway. I was there a good many nights with him. He had access to the warehouse.

Plaintiff's counsel offered to show by witness, that he was in the office with Galloway on the night of the 11th April, 1894, that he was drunk and spilt kerosene oil on the wood in the office and liked to have set fire to the warehouse.

The defendant's counsel objected to this testimony. Objection sustained and plaintiff excepted. I saw Galloway the morning of the fire about twenty-five yards from fire, talking to Mr. McLean. Witness said he was not at warehouse on the night of April 12.

Utter testified for plaintiff as follows:

I saw Galloway two or three hours after the fire. I don't know what his condition was at that time. When I got to the fire none of the doors to the building were open. The door to office was broken open after I got there. I went into office and it was full of smoke, I could hardly get in. The door between the office and warehouse was open. The warehouse was full of smoke, too. I was the first one that went in. The fire was all on the inside of warehouse when I got there. The fire all seemed to be in one end of the building, in the other end of warehouse from the office.

Chapin testified for plaintiff as follows:

I was in Dunn on the night of the fire, I saw Galloway that night about eleven o'clock on the street. He was

drunk.   I saw him go into the depot between 11 and 12 o'clock at night.   I went to fire, Galloway was not there. The fire was not in the office, but in the other end of warehouse.

E. F. Young re-called :

I saw Galloway at fire, he got there soon after I did and was drunk.

D. H. McLean testified for plaintiff: I live at Dunn ; I was at the fire ; Galloway was not there.   It was sometime before I saw him.   When he came up he said he was afraid he was going to be blamed about the fire.

Galloway's habits as to temperance were not good.   The office door was broken open after I got there.   The fire was not in the office, but was in the other end of the warehouse.

The plaintiff introduced the bill of lading for the goods destroyed.

The defendant introduced no testimony.

His Honor having intimated that plaintiff could not recover, the plaintiff submitted to a non-suit and appealed.

*Mr. F. P. Jones*, for plaintiff (appellant).
*Mr. Junius Davis*, for defendant.

FAIRCLOTH, C. J.:   At the close of plaintiff's evidence His Honor was of opinion that he was not entitled to recover and a non-suit was taken and an appeal granted.   At the time of the fire the defendant was not liable as a common carrier but was only liable for want of ordinary care as a warehouseman.   *Hilliard* v. *Railroad*, 6 Jones, 343.   The plaintiff was required to prove the negligence as a part of his case.   *Kahn* v. *Railroad*, 115 N. C., 638.   We think His Honor properly held that the evidence was insufficient to justify the jury in rendering a verdict for plaintiff. Judges are no longer required to submit a case to the jury

merely because some evidence has been introduced by the the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence. There is, or may be, in every case, a preliminary question for the Judge, not whether there is absolutely no evidence, but whether there is more than a scintilla of evidence upon which a jury can properly proceed to find a verdict for the party introducing it, upon whom the burden of proof is imposed. *Commissioners* v. *Clark*, 94 U. S. (4 Otto) 278 (61); *Ryder* v. *Womble*, L. R. Exc., 39. *Wittoswky* v. *Wasson*, 71 N. C., 451.          Affirmed.