STATE v. S. P. SATTERFIELD.

*Indictment for Official Negligence—Officers—Criminal Negligence—Evidence—Trial.*

1. Whether the evidence in the trial of an indictment was such as justified the jury in proceeding to a verdict—such evidence as would reasonably satisfy an impartial mind—is a preliminary question for this Court on appeal.

2. In the trial of an indictment against the defendant, who was principal Clerk of the House of Representatives of the General Assembly of 1895, for negligently permitting a bill, which had not been passed, to be delivered to the enrolling clerk to be enrolled, it appeared that on the day the General Assembly was about to adjourn there were 361 bills signed by the Speaker including the one in question; that defendant was the custodian of the bills and kept them in his office but had to leave his office frequently; that he had four or five assistant clerks and that members of the General Assembly and other persons had access to his office; that the bill in question was tabled

STATE *v.* SATTERFIELD.

and so marked on the back and was seen in the hands of the defend-
ant after being marked, and that the copyist who enrolled the bill
did not receive it from the defendant and did not notice its endorse-
ment and that defendant did not speak to her concerning the bill.
Subsequently the bill was sent to the Secretary of State's office, with
the signatures of the Speakers, and appeared upon the Statute books;
*Held,* that the evidence was not sufficient to warrant a verdict of
guilty. (Montgomery, J., dissents *arguendo,* in which Clark, J.,
joins.)

INDICTMENT for negligence in the discharge of the duties
of the office of Principal Clerk of the House of Representa-
tives of the General Assembly of North Carolina, tried before
*McIver, J.,* and a jury at January Term, 1896, of WAKE
Superior Court. There was a verdict of guilty and defend-
ant moved to set aside the verdict as against the testimony
for a new trial, &c. The motion was refused and defendant
was adjudged to pay a fine of $250 and the costs, and ap-
pealed.

*Mr. T. P. Devereux,* for the State.
*Mr. J. C. L. Harris,* for defendant (appellant).

FAIRCLOTH, C. J.: The defendant is indicted as princi-
pal clerk of the House of Representatives of the General
Assembly for causing and permitting to be delivered to the
enrolling clerk a certain pretended Act of Assembly for
enrollment. The Assembly was about to adjourn and on
March 13, 1895, three hundred and sixty-one bills were
signed by the Speaker, including this bill No. 1018. The
defendant was custodian of all bills and kept them in his
office not far from the Speaker's desk, and he had to leave
his office frequently and attend to his duties in front of the
Speaker. It appeared also that the defendant necessarily had
four or five assistant clerks and that the members and other
persons had access to the office; that, on that day, there was
much crowd and confusion. It appears that the bill was

tabled on the preceding evening and so marked on the back of it—and one witness testified that said bill and others, after the stamp "tabled" was on it, were seen in the hands of the defendant. On the same day a lady copyist for the enrolling clerk copied said bill and returned it to her principal. She testified that the defendant did not give her the bill and never spoke to her about it, and that she did not notice the back of the bill. The bill was soon afterwards found on the Statute book.

We have referred to this much of the evidence merely to show the situation, and the strongest aspect of it for the State. One witness testified that one of the assistant clerks had charge of all bills, after they were "sorted" and placed in pigeon holes in the desk of the office; that said assistant had the key to this desk where all bills were kept, and that he had custody of the bills. The defendant testified that he had no knowledge or information how the enrolling clerk came in possession of said bill. There were ten or twelve witnesses examined and we have carefully read the whole evidence, and we are of opinion that the defendant's motion in arrest ought to have been granted.

The duty of drawing the line between a scintilla and evidence fit for the jury is sometimes difficult and delicate, but it is important and the Court must assume the responsibility. It is a preliminary question for the Court who must find, not that there is absolutely no evidence, but that the evidence is such as would justify the jury in proceeding to a verdict—such evidence as will reasonably satisfy an impartial mind. *Commissioners* v. *Clark.* 94 U. S., 278; *Wittskowsky* v. *Wasson*, 71 N. C., 451; *Young* v. *Railroad*, 116 N. C., 932; *State* v. *Chancy*, 110 N. C., 507.

Error.

MONTGOMERY, J., dissenting: The defendant undertakes to defend himself by urging that as great a number as 361

bills were signed by the Speakers on the day when this one was signed; that there was a great rush and mighty confusion in the House that day; that he was frequently away from his office in the discharge of his duties, and that his assistant clerks, five or six in number, were not of his own choosing, but appointed for him by the House. But all of these things combined could not relieve him from the obligation of exercising reasonable care in performing his duty in connection with this particular bill. Indeed they should have made him more careful. If there had been a thousand bills instead of 361 and the House had been a Bedlam and the number of his clerks twice as great as they were, he could easily enough have taken this one bill out of the batch, after his attention was called to it, and called to it as a bill that had been tabled, and have placed it where it could not have been enrolled. Although others of his duties might have been impossible of performance on that day, owing to the matters he mentions, yet there could have been no excuse for a failure to make an effort to prevent this tabled bill from being enrolled after his attention had been called to it.

The indictment contained two counts, the first one charging that he permitted the enrollment negligently, and the second that he did it or had it done knowingly, wilfully and corruptly. He was convicted on the first count. The only question necessary to be decided is whether there was any sufficient evidence to be submitted to the jury on the question of negligence. I do not see how it admits of a doubt that there was such evidence. The following is the evidence: The bill, House bill 1018, had on its back, with others, this endorsement, "Tabled March 12, 1895," and, in fact, it had been tabled on that day. The journal of the House showed no entry that the bill had been tabled. Books

were kept by the defendant, as principal clerk of the House, in which were kept, receipts of the enrolling clerk for all bills received by him from the principal clerk. This bill 1018 as appeared from these books was not receipted for either by title or number. R. L. Smith, a member of the House of that session, introduced the bill. Smith for the State testified that he requested the Speaker to place the bill before the House; that such course was taken and that the bill was tabled on March 11th. The witness further testified that, on the next day, the 12th of March, he saw the defendant in the possession of the tabled bill. The following is the exact testimony of the witness Smith on that point: "The next day, 12th March, I met Satterfield, Chief Clerk, just at the left of the Speaker's chair and he said he had one of my bills. *I asked him to let me see it and what he was going to do with it?* He showed me the bill, he said he was going to give it to the enrolling clerk. I told him it was tabled last night. He said he would go back and *see about it.* He turned back towards the desk of the principal clerk which is in front of the Speaker's chair. Since then he asked me where it was I met him, I told him and he admitted it." The defendant, after having been seen in the possession of the bill as described in the testimony of the witness Smith on his way to the enrolling clerk's office and after he had been cautioned about it, when he came upon the stand as a witness for himself, did not give out one word as to what he did with the bill after that time or as to whether he took any precautions to have it put in the possession of Mr. Lillington, the assistant clerk, whose duty it was to place the bills into proper apartments in a desk which he kept for that purpose, and which desk Lillington kept locked, keeping the key himself. By the testimony, Lillington was the custodian of the bills, such as had been passed and such as had been tabled, and the bill was never

placed in his possession as far as the evidence discloses. The defendant, it is true, contradicted the witness Smith as to the nature of the conversation which they had when Smith discovered him going to the enrolling Clerk's office to have the tabled bill enrolled. The defendant was aware of the importance of that testimony. There was a conflict, but both sides of it was a matter for the consideration of the jury.

The evidence, including the defendant's own testimony, tended strongly to show that he did not use one particle of care to prevent the enrollment of this tabled bill.

I think the verdict of the jury and the judgment of the Court below ought to stand, for the verdict was justified by the evidence, and the judgment according to the law.

CLARK, J.:    I concur in the dissenting opinion.