J. S. MOORE & CO., INC. v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 11 April, 1917.)

1. Railroads—Fires—Defective Locomotives—Evidence.

In an action to recover damages for the alleged negligent setting fire to the plaintiff's lumber and plant by sparks from the defendant railroad company's defective locomotive while passing the place, evidence that another locomotive of the defendant was throwing sparks while passing there on the preceding day is incompetent.

2. Railroads—Fires—Defective Locomotives—Damages—Trials—Evidence — Nonsuit.

Where the evidence in an action against a railroad company to recover damages alleged to have been caused by the negligent burning of plaintiff's lumber and plant by sparks from the defendant's engine, passing 70 feet away, tends only to show that there was a mild wind blowing from the tracks at the time, but without evidence of any defective condition of the engine; that the fire was discovered thirty minutes after the engine had passed, it is too conjectural to be submitted to the jury upon the issue

of defendant's negligence; nor is the question affected by evidence that the only fire in the plant was in the boiler 200 feet from where the fire started, which operated the dry-kiln, on account of the likelihood of fires occurring in places of this character; and under the circumstances of this case a judgment as of nonsuit should be granted.

CLARK, C. J., concurring; ALLEN, J., dissenting; HOKE, J., concurring in the dissenting opinion.

CIVIL ACTION, tried at October Term, 1916, of CUMBERLAND, before *Winston, J.*

The action is brought to recover damages for burning plaintiff's lumber and part of its mill plant, alleged to have been caused by the negligence of defendant in carelessly permitting fire to escape from its engine.

At the conclusion of the evidence a motion to nonsuit was sustained, and plaintiff appealed.

*Sinclair, Dye & Ray, Oates & Herring for plaintiff.*
*Rose & Rose for defendant.*

BROWN, J. Plaintiff assigns error:

1. That it was error for the court to sustain defendant's objection when plaintiff offered to show by the witness J. R. Bowden that the day before the fire complained of the defendant's locomotive on the through freight, going north, put out fire on the witness's lands near the plaintiff's mill.

2. That the court also erred in allowing the defendant's motion for judgment as of nonsuit.

The first exception cannot be sustained. *Ice Co. v. R. R.,* 126 N. C., 800; *R. R. v. Smith,* 55 Southern, 871; *Kerner v. R. R.* 170 N. C., 94.

In the last case it is said: "It is conceded that where a fatal fire has been set out from a designated or known engine, it is admissible to introduce evidence of other fires previously set out by the same engine, for the purpose of showing its defective condition, but the rule has never been extended so as to permit evidence of sparks emitted by some other engine at some other time and place."

The motion to nonsuit was likewise properly allowed.

If the evidence is taken in the light most favorable to the plaintiff, as it must be on a motion for nonsuit, the following facts are shown: That the mill plant was located on the east side of the railroad, 70 feet from it; that the wind was blowing across the railroad track towards the mill, but there was not much wind blowing. The fire caught on the side of the mill next to the railroad, about 1 o'clock in the morn-

ing, and two trains had passed along the railroad track within thirty minutes before the fire was discovered; that the mill was located on a grade which started about 200 yards below or south of the mill. There was a fire in the boiler of the plant, which was about 280 feet from where the fire started. No other fires were kept going at night except that.

When first discovered, about 1 o'clock at night, the fire was next to the railroad and the side of the planing mill next to the railroad was burning at the north end. The lumber shed and mills are all together. When discovered, the fire had not reached quite to the top of the lumber shed.

There is no evidence tending to show that either of the engines which passed the mill within thirty minutes before the fire were throwing any sparks, nor were any burned cinders discovered between the track and the mill. There was evidence that there were rotten lumber, trash, and shavings in the mill shed. There was no evidence that the fire was communicated from the right of way or that the right of way was in a foul condition, or had any inflammable matter on it.

The defendant's evidence established the fact, if true, that the engines were properly equipped with spark arresters and skillfully operated.

There is no difference of opinion as to the law applicable to this case. It is settled that if the plaintiff has introduced evidence sufficient in probative force to justify a jury in finding that the fire was caused by a spark from defendant's engine, the issue should have been submitted, the weight of the evidence being a matter for the jury. In such case the defendant is called upon to prove that its engine was properly equipped and operated. If so equipped and operated, there is no negligence or liability upon the part of defendant. *Williams v. R. R.,* 140 N. C., 624; *Aman v. Lumber Co.,* 160 N. C., 371; *McRainey v. R. R.,* 168 N.C., 571.

It is undoubtedly true that the fact in controversy here, as to the origin of the fie, may be established by circumstancial evidence, but the circumstances proven must have sufficient probative force to justify a jury in finding that the fire originated from a spark from defendant's engine before the issues can be submitted to them. What is sufficient evidence to justify the court in submitting a controverted issue to the jury has been much debated.

This Court has used various forms of expression in commenting on the subject. In *Lewis v. Steamship Co.,* 132 N. C., 904, the Court holds that if the evidence is "conjectural or speculative, it should not be submitted to the jury." In *S. v. Satterfield,* 121 N. C., 558, the Court

holds that it is for the court to find "that the evidence is such as would satisfy a jury in proceeding to a verdict, such as will satisfy an impartial mind."

In *Young v. R. R.,* 116 N. C., 932, we find this language: "Judges are no longer required to submit a case to the jury merely because some evidence has been introduced by the parties having the burden of proof, unless the evidence be of such character as that it would warrant a jury to proceed in finding any verdict in favor of the party introducing such evidence."

In *Cobb v. Fogalman,* 23 N. C., 440, the Court says that the evidence must amount to more than that which raises "a possibility or conjecture of a fact."

In *Wittkowsky v. Wasson,* 71 N. C., 451, the Court says: "There must be evidence from which they might reasonably and properly conclude that there was negligence."

The subject was considered by the House of Lords in *Bridges v. Ry. Co.,* Law Journal 1874, 7 H. L. 213, all the judges rendering opinions. The rule is thus stated by *Mr. Justice Brett:* "Are there facts in evidence which, if unanswered, would justify men of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain?" This is regarded by Professor Wigmore as the best and fairest statement of the most satisfactory test that can be adopted. 4 Wig., 2495.

"Are the circumstances in evidence adequate to convince a reasonable man?" asks the Supreme Court of Kansas in *R. R. v. Matthews,* 58 Kan., 447.

We think not, in this case, in the absence of any evidence that the engines were emitting sparks at the time they passed. The plaintiff seeks to bolster up its case by attempting to exclude every other possible cause. If this were sufficient, then plaintiff has failed. The only evidence as to that is that the sole fire at the mill kept up by the plaintiff that night was in the boiler room. It is likely the fire started in the machine-room shed, where the burned lumber was. The witness Spencer says the burned lumber was in a part of the machine-room shed, and before that in the dry-kiln. The room was afire when the witness McArthur first saw it. The fire might have been started by a match carelessly dropped in the shed during the day or from a spark from a workman's pipe as he left after his day's work, or the lumber might have been greatly overheated in the dry-kiln and developed a fire in that way. A fire just started, as is well known, will sometimes slumber and smolder for hours and then burst into a blaze.

There are many unaccountable ways by which sawmills catch fire, for they are notoriously very bad fire risks. If this fire originated from a spark from the defendant's engine, it is remarkable that it should have reached such proportions in the space of thirty minutes. It is also remarkable that if the engines were throwing sparks the witness McArthur should not have observed it and testified to it, and further that no cinders were found about the right of way and mill grounds. The cases cited by the learned counsel for plaintiff do not support their contention and are easily distinguished.

In *McRainey's case, supra,* the fire stated on right of way at the place where the track crossed the swamp and set fire to combustible matter on right of way. In *Deppe's case* 152 N. C., 80, an engine was switching for three-quarters of an hour near the mill; the ventilator on top of the mill was open; the fire started there; the mill and ventilator were entirely enveloped in dense smoke from the engine; it was a bright summer day and sparks could not have been seen in the smoke. In *Ice Co. case,* 126 N. C., 798, the evidence showed affirmatively that the engine passed the ice factory emitting sparks, and that soon thereafter the fire broke out. In *Kerner's case,* 170 N. C., 94, there was evidence of sparks from the engine, but the jury found that they were not the cause of the fire.

In *Hardy v. Lumber Co.,* 160 N. C., 116, also in *Kornegay's case,* 154 N. C., 389, there was abundant evidence that sparks were emitted by the engines. In *Williams' case,* 140 N. C., 624, the fire broke out in foul matter on the right of way shortly after the engine passed. In *Aman's case,* 160 N. C., 371, there is evidence that the engine threw sparks and live coals. In *Maguire's case,* 154 N. C., 384, the fire occurred off the right of way, and, as in this case, there was no evidence that the engine threw out sparks. There was a verdict for plaintiff, but this Court unanimously sustained the motion to nonsuit, saying: "Where plaintiff alleges that he has been injured by fire originating from sparks issued from defendant's locomotive he must not only prove that the fire *might* have proceeded from defendant's locomotive, but must show by *reasonable affirmative* evidence that it did so originate," quoting from *Ice Co. case, supra.*

In *Kemp's case,* 169 N. C., 731, the fire started in the defendant's depot, which set fire to a box car and communicated the same to property belonging to the plaintiff. The Court held that where the evidence only tended to show that the defendant's depot caught fire during the night, *supposedly from a passing engine,* and this fire was communicated to the plaintiff's property, a judgment of nonsuit was properly allowed.

In *R. R. v. Gossard,* 14 Ind. App., 244, it is held that proof that a fire started a few minutes after an engine passed, and that at a point a quarter of a mile distant sparks were escaping from the engine, is insufficient to show negligence on part of the railroad company, especially in a case where the evidence shows that engine was properly equipped with a spark arrester. In a concurring opinion the decision is sustained on the ground that there is no evidence that the engine on that or any other occasion threw live sparks a distance of 66 feet.

In *Musselwhite v. R. R.,* 4 Hughes, 166, the evidence showed that soon after a freight train passed a large shop that stood near the track was on fire in the upper story near a broken window. It was alleged that the fire was started by a spark from defendant's engine, proved to be in good condition. The evidence was held to be too uncertain and conjectural to justify a recovery.

We have found cases holding that where engines had passed through open fields covered with dry grass and straw, with high winds prevailing, and a fire broke out shortly after their passage, the coincidence was a fact sufficient to be submitted to the jury as some evidence of the origin of the fire. But a diligent search has failed to find a case wherein it has been held that the fact that an engine passed a building situated 70 feet from the track and off the right of way, a half-hour before a fire broke out in it, is sufficient evidence to warrant a finding that such fire was caused by the engine.

There are hundreds of lumber mills situated very near railroad tracks in this State, and to hold passing engines responsible for every unexplained fire that breaks out in them, without other evidence, would impose too great a liability upon the common carriers who are compelled to serve them.

In our opinion, the evidence raises nothing more than a conjecture and is not strong enough in probative force to justify the submission of the issue to the jury.

The judgment is

Affirmed.


Clark, C. J., concurring: In *Williams v. R. R.,* 140 N. C., 624, the rules of negligence applicable to a case of this kind are thus summed up:

"1. If fire escape from an engine in proper condition, having a proper spark arrester, and operated in a careful way by a skillful and competent engineer, and the fire catches off the right of way, the defendant is not liable, for there is no negligence.

"2. If fire escape from an engine in proper condition, with proper spark arrester, and operated in a careful way by a skillful and compe-

tent engineer, but the fire catches on the right of way, which is in a foul and negligent condition, and thence spreads to the plaintiff's premises, the defendant is liable. *Moore v. R. R.,* 124 N. C., 341.

"3. If fire escape from a defective engine, or defective arrester, or from a good engine not operated in a careful way or not by a skillful engineer, whether the fire catches off or on the right of way, the defendant is liable.

"In the first case there would be, as above stated, no negligence. In the second, the foul right of way would be negligence, and in the third the defective engine or spark arrester, or the negligent operation of a good engine, would be negligence."

In this case it is true the evidence of the defendant of a proper spark arrester and a competent engineer cannot be considered on a motion to nonsuit, but there is no evidence from the plaintiff to show negligence in that respect, nor even that the fire "escaped from its engine."

Neither is there any evidence that the fire caught on the right of way, but the contrary appears from the right of way not having been burned over. It is true that if the origin of the fire is traced to the defendant the burden would then be upon it to show that it was not negligent. But the plaintiff's evidence failed to show the origin of the fire.

In *McRainey v. R. R.,* 168 N. C., 571, and that class of cases the fire started on the right of way, and this is evidence of negligence under Rule 1 as above stated in *Williams' case.* In *Aman v. R. R.,* 160 N. C., 371, and like cases there was evidence that the engine threw sparks and live coals, which was evidence of negligence. But there is nothing of the kind in this case.

In *Deppe's case,* 152 N. C., 80, which comes nearer this case on the facts than any other relied on by the plaintiff, the engine had been switching for three-quarters of an hour near the mill, and it was shown that the ventilator on top of the mill was open, that the fire started there soon after and the smoke from the engine entirely enveloped the mill, and it was on a bright summer day so that sparks could not be seen in the smoke. In this case there was no evidence except that an engine passed by not very long before the fire occurred, but there was nothing to indicate that the engine was throwing sparks or that its smoke, bearing sparks, enveloped the plaintiff's property, nor any evidence tending to show the absence of a spark arrester or that the engine was throwing sparks or that it was defectively equipped or operated.

In *Kemp v. R. R.,* 169 N. C., 731, though the fire started in defendant's depot which caught fire in the night, and, it was alleged, from a

MOORE v. R. R.

passing engine, and this fire extended to the plaintiff's property, a judgment of nonsuit was sustained because it was not shown that the depot was set fire by sparks from an engine.

The case exactly like this on the facts in *McGuire v. R. R.,* 154 N. C., 384, where it was not shown that the fire began on the right of way, though it was burned over and no evidence that the engine threw out sparks. Though there was a verdict for the plaintiff, the Court held that there should be a nonsuit, for the plaintiff "must not only prove that the fire *might have* proceeded from defendant's locomotive, but must show by *reasonable affirmative* evidence that it did so originate," citing *Ice Co. v. R. R.,* 126 N. C., 798.

This case does not come within the rule laid down in *Williams v. R. R., supra,* nor under any other precedent in our books, as I understand them. There is no evidence that the engine was defective or defectively operated or that it threw out sparks, and the fire did not originate on the right of way.

It would be dangerous and might lead to great injustice to hold the railroad company responsible for every fire that breaks out after an engine has passed, when the fire originated off the right of way and there is no evidence beyond the fact that an engine passed not long before the fire began. This would make the railroad company an insurer of all the property along the right of way, unless it can show that the fire was not caused by its engine.

While direct evidence that the fire was caused by the negligence of the defendant is not required, but it may be inferred by the jury from the attendant circumstances, there must be more than bare evidence of a possibility, or even a probability, that the fire was so caused. As the counsel for the defendant well says, there must be more than the argument of solicitor, on one occasion: "Gentlemen of the jury, there *was* a hog. *Here* is a negro. Take the case."

ALLEN, J., dissenting: The plaintiffs allege that their property was destroyed by fire which negligently escaped from the engine of the defendant, and the rule uniformly applied in cases of this character since the case of *Ellis v. R. R.,* 24 N. C., 138, is that a presumption of negligence arises from proof of the origin of the fire, and that when this is shown the burden is "on the defendant to rebut the presumption of negligence arising from proof connecting it with the origin of the fire, by evidence which would satisfy the jury that the engine was properly equipped, that competent men were in charge of it, and that it was prudently operated." *Currie v. R. R.,* 156 N. C., 423.

It follows necessarily, as the burden of proof is on the defendant, if there is evidence of the origin of the fire, that we cannot consider the evidence of the defendant that the engines were properly equipped and skillfully operated, on a motion for judgment of nonsuit, and, as said in *McRainey v. R. R.,* 168 N. C., 571, "The only question presented by this appeal is whether there is any evidence that the fire of which the plaintiff complains originated from defendant's engine and passed to his land, causing him damage."

Is there evidence of the origin of the fire?

The fact may be established by circumstantial evidence, and it is not necessary for a witness to testify that he saw sparks coming from the engine. Recoveries were sustained in *McMillan v. R. R.,* 126 N. C., 725; *Williams v. R. R.,* 140 N. C., 623; and in *Deppe v. R. R.,* 152 N. C., 82, on circumstantial evidence, and when no witness testified to seeing sparks.

The rule laid down by Shearman and Redfield on Negligence, sec. 58, as to what amounts to evidence, is that "The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover unless the defendant produces evidence to rebut the presumption. It has sometimes been held not sufficient for the plaintiff to establish a probability of the defendant's default; but this is going too far. If the facts proved render it probable that the defendant violated its duty, it is for the jury to decide whether it did so or not. To hold otherwise would be to deny the value of circumstantial evidence."

In *Fitzgerald v. R. R.,* 141 N. C., 535, the rule is stated to be that the case cannot be withdrawn from the jury "if the facts proved established the more reasonable probability that the defendant has been guilty of actionable negligence," and this was approved in *McRainey v. R. R., supra.*

In *Henderson v. R. R.,* 159 N. C., 583: "But if the more reasonable probability is in favor of the plaintiff's contention the question ought to be submitted to the jury"; and in *Kelly v. Power Co.,* 160 N. C., 285: "If the evidence for the plaintiff renders it probable that the defendant neglected its duty, it is for the jury, not for the court, to decide whether it did so or not."

If, therefore, upon proof of the origin of the fire, there arises a presumption of negligence, and the burden of proof is then on the defendant, and if the degree of proof required of the plaintiffs is that they furnish evidence that establishes the "more reasonable probability" or "renders it probable" that the fire originated from the defendant, the

only inquiry with us is whether the plaintiffs have furnished evidence which makes it reasonably probable that the defendant set out the fire; and in determining this question the unvarying rule is that the evidence must be construed favorably for the plaintiffs, and that every fact which the evidence tends to prove must be accepted as established.

What, then, does the evidence tend to prove?

The fire was discovered about 1 o'clock at night, and Frank McArthur, who was on the premises at the time, testified "that the fire in the boiler was only pulling the dry-kiln, and there was no other fire around the place." The witness McAllister also testified that "when he got there the fire was burning from the railroad, coming to the mill." All the evidence is to the effect that the boiler was 250 or 260 feet from the place where the fire started, and that the wind was blowing from this place to the boiler and not from the boiler to the origin of the fire. The wind was also blowing from the railroad to the place where the fire started.

We have it, then, established for the purpose of a motion for judgment of nonsuit that there was no fire on the premises before the engines of the defendant passed except in the boiler, and that the wind was blowing so it could not carry the sparks from the boiler to the place where the fire was first seen. Two engines of the defendant passed, and within thirty minutes the fire was discovered burning on the side of the shed next to the track, and within 60 or 70 feet from the track, and the wind was blowing from the track to the shed. If there was fire in the engines of the defendant and in the boiler of the plaintiffs, and no other fire on or about the premises, the fire which caused the damage must have originated from the engines or the boiler. Which is the "more reasonable probability"—that it was from the engines, which passed within 60 or 70 feet, with the wind blowing to the place of the fire, or from the boiler, distant 250 or 260 feet, with the wind blowing in a different direction? The evidence also shows that the fire caught on the side next to the railroad, and that there was a large shed between the boiler and the place of the fire.

The Court evidently felt the probative force of this evidence, and thought it necessary to furnish some explanation for the fire.

It is, therefore, suggested that the fire might have started from a match carelessly dropped during the day, or from a spark from a workman's pipe, or that the lumber might have been greatly overheated in the dry-kiln and developed a fire in that way, when there is no evidence that any one about the premises had a match or dropped one, or that any workman smoked, or that the lumber was overheated in the dry-kiln. It is certainly more reasonable to conclude that the engines, which

passed with fire in them, set out the fire, than that the fire was caused by a match or a workman's pipe, which have no existence so far as this record discloses, except in the imagination, or by the overheating of lumber in a kiln, which had been out of the kiln in the open air, in March, at least six or seven hours.

Nor does it appear that the fire attained unusual proportions in thirty minutes. J. A. Powell testified that he was asleep when the whistle blew; that he got up and dressed and went to the mill, and "the fire was moving in toward the main body of the mill and was about 10 feet square." McArthur saw no spark, because he was in the boiler room, and he says: "The door toward the railroad was shut."

The evidence as to the origin of the fire is as convincing as in *McMillan v. R. R.,* 126 N. C., 725; *Williams v. R. R.,* 140 N. C., 623; *Deppe v. R. R.,* 152 N. C., 82; *Aman v. Lumber Co.,* 160 N. C., 370; *McRainey v. R. R.,* 168 N. C., 571; and in all of these cases it was held sufficient to be submitted to a jury.

The Court says in the *McMillan case:* "While it is not negligence for a railroad to run its trains over its roads well managed and well equipped, as it seems the defendant's train was, yet we know that no spark arrester can be so constructed as to entirely prevent the emission of sparks, without destroying the efficiency of the engine; and while it was not negligence in the defendant to run such a train over its road, the fact that it had recently passed over the road, and fire was found there, was some evidence tending to show that it emitted sparks that set the grass on fire."

This is quoted and approved in the *Williams case,* and in the latter case the Court further says: "No one testified that he saw the sparks fall from the engine upon the right of way. . . . But here the fire was seen on the right of way; it burnt along the track between the ditch and the ends of the ties, and thence had gone into the woods. The wind was blowing from the northwest across the track, the fire being on the south side. Two witnesses testified that they first saw the smoke about thirty minutes after the defendant's engine passed. How long before that the fire began no one knew, but there was no fire before the engine passed. These were matters for the jury."

It is true that in each of these cases the fire from the engine ignited combustible matter on the right of way, but, as said in the *Deppe case,* "In considering the *origin* of the fire, it is immaterial whether the fire caught on or off the right of way."

These cases establish the principle that when it is shown that there was no fire before the train passed, and it breaks out shortly there-

21—173

after at a point to which the wind is blowing from the train, that this is circumstantial evidence that the fire came from the train.

In the *Deppe case* the fire started in a dry-kiln off the right of way, in which there were heated pipes, and it could not have come from the defendant's train unless sparks from the engine entered a ventilator near the top of the kiln, 4½ by 8 feet and opening back 6 or 7 feet. No witness saw any sparks. The plaintiff offered evidence tending to prove that the fire was not near the heated pipes, and that there was no other fire on the premises nearer than 156 feet, and that the wind was not blowing from this place towards the kiln, but in an opposite direction; that an engine of the defendant was shifting within about 60 feet of the kiln three-quarters of an hour or one hour and three-quarters before the fire was discovered, and that the smoke from the engines enveloped the kiln.

The only circumstance in favor of a recovery present in the *Deppe case* that is not in the case before us is as to the smoke, and this proves nothing except that there was smoke, and that the wind was carrying it to the kiln, while, on the other hand, there were the circumstances in favor of the defendant of the improbability of a spark entering the ventilator and passing back 6 or 7 feet into the kiln, and the strong probability that the lumber in the kiln became ignited by the heat from the pipes. The *Deppe case* has been approved eighteen times, as appears from the annotations, 164 N. C., 710, and four times since the annotations were printed.

In *Aman's case* there was evidence that sparks were seen to come from the engine on the day *before* the fire, but that on the day of the fire "no one saw any sparks emitting from it," and the circumstances relied on were that there was no fire before the engine passed, that the engine passed and the fire broke out soon thereafter.

*Justice Walker* says, when considering this evidence on the refusal of a motion for judgment of non-suit: "The familiar rule is that the evidence, upon such a motion, should be considered in its most favorable light to the plaintiff, and every fact which it proves or can prove should be taken as established. With this guide before us, we are led unhesitatingly to the conclusion that the ruling of the Court was correct"; and again: "It can make no difference whether the sparks lighted on or off the right of way, if they kindled the fire and destroyed plaintiffs' trees, there was a sufficient case of *prima facie* evidence for submission to the jury, upon the whole evidence, to find the ultimate fact of negligence. This Court has been most pronounced in its opinion

upon this subject, and has adhered steadily and strictly, without the shadow of turning, to the just rules which have heretofore been promulgated."

In *Kemp's case,* 169 N. C., 732, no recovery was allowed because, as stated in the opinion, "It was admitted by the plaintiff that he could not prove the origin of the fire," and there was no evidence that any engine of the defendant ever passed the point where the fire originated, unless this might be inferred from the fact that the defendant was maintaining a depot building and a railroad track.

I have thought it necessary to discuss the principal cases bearing upon the question involved in this case, because, as I see it, a precedent is being established which will prevent just recoveries hereafter in cases which have heretofore been sanctioned by a long line of decisions.

HOKE, J., concurs in this opinion.