(362) The following is the affidavit on which plaintiff was arrested:
"STATE OF NORTH CAROLINA — Caswell County.
"Before R. L. Mitchell, J. P. — J. W. Murray, agent for J. A. Tate, complains and says that at and in said county and in Hightower Township, on or about 4 August, 1893, E. W. Oakley did *Page 223 
commit perjury, to-wit, making a statement that there was no claim on property that he had mortgaged to said J. A. Tate, contrary to the form of the statute and against the peace and dignity of the State. "J. W. MURRAY, "Agent.
 "Subscribed and sworn to before me, 8 May, 1894. "R. L. MITCHELL, J. P."
After the pleadings were read, and the jury had been impaneled, the defendant insisted that, it being admitted that the charge of perjury upon which the plaintiff was arrested and prosecuted is that contained in the affidavit made by J. W. Murray (a copy of which is annexed to the answer), his Honor should hold as a matter of law that no charge of perjury had been made, and dismiss the action. His Honor refused to so hold, and the defendant excepted.
The issues were as follows:
1. "Did the defendant maliciously prosecute the plaintiff on a charge of perjury without probable cause?" Answer: "Yes."
2. "Was said prosecution terminated by compromise or agreement with or by procurement of the plaintiff Oakley?" Answer: "No."
3. "What damages, if any, have the plaintiffs sustained?" Answer: "We, the jury, assess damages for the plaintiffs at $350."
Judgment was rendered as follows:
"This cause coming on to be tried before his Honor, H. R.Starbuck, Judge presiding, and a jury, and they having (363) found all the issues submitted in favor of the plaintiff, and assessed his damages at $350, it is now, on motion of J. A. Long, attorney for the plaintiff, ordered and adjudged that the plaintiff recover of the defendant the sum of $350, with interest thereon from 21 October, 1895, until paid, and the costs of this action, to be taxed by the clerk of the court.
 "HENRY R. STARBUCK. "Judge Presiding."
J. W. Murray, witness for defendant, testified: "I was in defendant's employment. Tate told me to take out a warrant for the plaintiff for stating when he gave the mortgage of August, 1893, that there was no other mortgage on the crop, when in fact there was one. He gave me the mortgage to carry to the justice, Mr. Mitchell; I did so. I explained the case to the justice; he said he supposed it was perjury, but he would write down the definition of perjury in the complaint. The justice wrote the affidavit; I signed it, and swore to it. *Page 224 
'Squire R. L. Mitchell, witness for the defendant, testified: "Mr. J. W. Murray came to my house at 2 P. M., 8 May, 1894, and said Mr. Tate had sent him to get a warrant against Oakley for giving a mortgage and stating there was no other mortgage, when there was one. I told Murray that I had rather have counsel before I tried it, as I did not know what head it would come under and what the punishment would be. Murray said Tate wanted it tried the next day. I got my book and read a clause in it to Murray; he said he did not know whether it came under that head or not. I told him I would put that down in the affidavit, and also state the facts as he had stated them. I wrote it out that way, and he (364) took the warrant to the officer that evening. The clause I read to Murray in the book was under the head of perjury, and that was why that word was used." (To all this evidence plaintiff objected.) "The mortgage was present and I read it over. The trial took place at Ridgeville next day, 9 May, 1894, at 2 P. M. I read the warrant in the presence of Tate, and he was sworn, and said that was his complaint. Sharpe testified that he read the mortgage to Oakley, and that Oakley did not state that there was a mortgage due to the Taylors. The matter investigated was Oakley's giving a mortgage and stating in the mortgage that it was the only lien. Oakley was bound over to the next term of court. Some time after that I received a note from Tate; did not think that it would be needed again; do not know where it is; when I got it I did not think it would ever be needed again; have not searched for it; I remember its contents." (Plaintiff objected to witness stating contents of note.) "Tate wrote that the matter had been amicably settled, and that if I had not returned the papers that I should not do so, and wanted it stopped, at as little cost as possible. I made return of my action."
Exhibit "B."
"Return of R. L. Mitchell, J. P., to August Term, 1894:
"NORTH CAROLINA — Caswell County.
Hightower Township.
"To S. B. ADAMS, Clerk Superior Court:
"The following is a list of criminal actions tried before me and finally disposed of since the last term of the Superior Court held in Yanceyville in April, 1894:
"1. State v. C. F. Oakley: The judgment of the court was that defendant was guilty of fraud, but the case was afterwards amicably settled between the parties, J. A. Tate and C. F. Oakley, by (365) Mr. Oakley paying the debt that was claimed on the mortgaged property. *Page 225 
"2. State v. E. W. Oakley: The judgment of the court and the settlement between the parties were the same as in the first case. F. A. Tate paid the costs in both cases.
"I also send herewith the papers in the above cases.
 "R. L. MITCHELL, "Justice of the Peace, Hightower Township."
On cross-examination witness testified: "I think Tate was present at the trial when I read the warrant, and I asked him if that was his complaint, and he said it was. I made my return under the head of a fraud, because I found out after the trial the defendants were not guilty of perjury."
Upon the close of the evidence, and before going to the jury, counsel stated their contentions. Counsel for defendant contended that there was not sufficient evidence upon either the first or second issues to go to the jury, and orally asked the court to so hold. The court declined to so hold, and defendant excepted.
Counsel further contended that the defendant was not responsible for the error of the justice in his definition of "perjury," and that there was no evidence that the defendant had prosecuted such a charge, and the first issue should be answered "No."
His Honor stated that he agreed to the proposition that defendant could not be held responsible for the error committed by the justice, but declined to hold that there was no evidence that the defendant had prosecuted the plaintiff for perjury. Defendant excepted.
Upon the question, "Did the defendant prosecute the plaintiff?" the court charged, in part, as follows: "That the defendant could not be held responsible for any mistake made by the justice of the peace or by Murray in believing that the facts constituted the (366) offense of perjury; but if the defendant, after the warrant was issued, connected himself with and carried on the prosecution, then, if the jury were satisfied that the prosecution was for perjury, and malicious, they would answer the first issue, `Yes.'" To this instruction defendant excepted.
There was no exception to the charge in submitting to the jury the questions of actual and punitive damages upon the third issue, except that the question of damages should not have been submitted, for the reason that the only charge in the complaint is that an accusation of perjury was made, and when the plaintiff failed to sustain that he was entitled to no damages whatever.
Verdict for plaintiff. Motion for new trial; overruled. Judgment. Appeal by defendant. *Page 226 
After stating the case: It is clear that the defendant never intended or authorized a warrant to be issued against the plaintiff for perjury. This appears from the evidence of 'Squire Mitchell, and Murray, the defendant's agent. The facts stated in the affidavit do not constitute perjury. The justice was at a loss to determine the offense, but after looking in "his book," under the head of "perjury," he concluded that must be the offense, and so he filled up the warrant and proceeded. We think his Honor properly held that the defendant could not be held responsible for the error committed by the justice. This is the common-sense of the matter, and it was so expressly held in McNeely v. Griskill, 2 Blackford (Ind.), 259. The defendant specially asked his Honor to hold that "upon the whole of the evidence there is no sufficient evidence to go to the jury." This was declined. This requires us to examine the (367) whole of the evidence. The court, after exculpating the defendant for the mistake of the justice, said to the jury: "But if the defendant, after the warrant was issued, connected himself with and carried on the prosecution, then, if the jury were satisfied that the prosecution was for perjury, and malicious, they would answer the first issue `Yes.'" Without passing upon that part of the charge as a legal proposition, we find error on another ground. We fail to find any sufficient evidence to go to the jury on that question. The justice says that "the matter investigated before me was Oakley's giving a mortgage and stating in the mortgage that it was the only lien." It is true, he says, he read over the warrant and asked Tate if that was his complaint, and he answered that it was. This must have referred to the facts stated in the warrant instead of the charge of perjury. This view accords with his own testimony and that of Murray and the justice and the course of the proceeding and the justice's return, in which he says the defendant (plaintiff here) was guilty of fraud.
We think his Honor should have directed a verdict in favor of the defendant. The sufficiency of evidence to be submitted to a jury is stated in Young v. R. R., 116 N.C. 932, 936. It is unnecessary to examine the other exceptions.
Reversed.
 Cited: Durham v. Jones, 119 N.C. 273. *Page 227 
(368)