## HINES, Director General of Railroads, v. BOWLING.

(Circuit Court of Appeals, Fourth Circuit. February 9, 1921.)

No. 1837.

1. **Malicious prosecution** ⬗16—**Malice and want of probable cause must concur.**

   To authorize recovery in an action for malicious prosecution, both malice and want of probable cause must exist.

2. **Malicious prosecution** ⬗22—**Railroad car theft investigator, submitting facts to commissioner issuing warrant, held not liable.**

   A judgment against the Director General of Railroads for malicious prosecution for causing the arrest of plaintiff for theft *held* not supported by evidence showing that defendant's agent in charge of such matters, in investigating the theft of articles from a car while being unloaded by a number of young men, of whom plaintiff was one, talked with two of the number and then took them to a United States commissioner, who, after talking with them, took the affidavit of one and, acting on his own judgment, issued a warrant for the arrest of all the others engaged in the work of unloading the car, including plaintiff, who was discharged on preliminary examination.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; Benjamin F. Keller, Judge.

Action at law by R. E. M. Bowling, an infant, by John W. Bowling, his next friend, against Walker D. Hines, Director General of Railroads. Judgment for plaintiff, and defendant brings error. Reversed.

This is an action at law for malicious prosecution, brought originally in the circuit court of Mercer county, W. Va., and removed for trial upon the petition of the defendant to the District Court of the United States for the Southern District of West Virginia. The plaintiff, R. E. M. Bowling, is an infant, and sues by his father and next friend, John W. Bowling. The facts in the case are in substance as follows:

A railroad belonging to the Virginia Railroad Company, and extending from the state of West Virginia into and through the state of Virginia, was taken over by the President of the United States under the act of Congress authorizing such action, before the transaction hereinafter related took place, and was at the time in the possession and control of the Director General of Railroads.

On or about the 29th of July, 1918, a car which was loaded with interstate freight, shipped from the state of Virginia into the state of West Virginia, was being unloaded at Princeton in the latter named state. A number of persons was engaged in the work of unloading the car, and in work about the warehouse to which the contents of the car were being taken. Among these workmen was the plaintiff, R. E. M. Bowling. Whilst the work of unloading was going on, three rain coats, ten cartons of cigarettes, and a box of chewing tobacco were taken from the car.

At the time the Director General took control of the Virginia Railway, a man by the name of C. D. Peerman was in the employment of the company, and his duties were to look after robberies and thefts, taking place in connection with the operation of the railroad, and from property and effects in possession of the railroad for transportation. Peerman was retained by the Director General in the same position and with the same duties. The theft from the car which was being unloaded at Princeton was reported to Peerman, and he went there to investigate it.

Upon inquiry he learned that a youth by the name of Daniel Belcher, who was one of the persons engaged with others in unloading the car, had been seen with some of the cigarettes which had been taken. Peerman interviewed

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Belcher, and was told by him that the cigarettes and other property had been taken from the car by the boys and young men who were working around it, and he gave Peerman the name of A. E. Powell, another one of the workmen, who was there and took part in the theft. He stated, further, that Bowling, the plaintiff below in this action, was one of the number working in and about the car. Peerman thereafter saw Powell, who stated that he was present, had himself taken some of the articles, and gave the names of others who constituted the working force, including the name of the plaintiff in this action.

After this interview Peerman took Belcher and Powell to the office of J. H. Gadd, the United States commissioner at Princeton, who was also a practicing lawyer, and was the assistant prosecuting attorney for the county in which Princeton is located. Peerman made no affidavit in the case, but at the interview with the commissioner he produced the stolen coats and informed the commissioner that they had been taken from the possession of the railroad. The commissioner examined Belcher and Powell, and he was informed by them that Fitzhugh Marshall, A. E. Proffitt, Joe Rowland, Franklin Bradshaw, R. E. M. Bowling (the plaintiff), R. E. Brown, O. C. Campbell, C. S. Shumaker, Daniel Belcher, and A. E. Powell, were the persons working about the car when the goods were stolen. Thereupon the commissioner took the affidavit of Powell, and issued a warrant for the arrest of the others named on the charge of unlawfully taking, stealing, and carrying away the goods and chattels of the Virginia Railway Company, to wit, the articles heretofore named, being in interstate shipment in the possession of the said railway company. The commissioner, on his examination as a witness in the trial below, stated what occurred when Peerman brought Belcher and Powell to his office, and the substance of his testimony as set out in the record is as follows:

"Peerman stated his purpose in bringing the two young men there, and, as the witness remembers this particular case, Peerman went into his office to get some advice, knowing that a larceny had been committed, as to whether he should proceed under the state laws or under the federal laws. He examined the two young men Peerman brought with him, with reference to the larceny that was alleged to have been committed, with a view of finding out whether a warrant should be issued against any of the defendants. The witness made an investigation of the matter, as he always does before he issued any warrant, to ascertain as far as possible what offense, if any, had been committed.

"In the course of the examination of these two boys, or young men, they admitted that they had stolen some of the goods, and then the inquiry went on, for the purpose of seeing if any other persons were implicated. The witness cannot remember distinctly just all that was said on this occasion, because he did not impress his memory with it at the time; but he does remember that he got the impression that all of the defendants in the warrant were implicated in the larceny; that they were all, as he remembers the statement of these two boys, employed in a similar capacity by the Virginia Railway, and worked in or around the car where the theft had been committed, and the witness got the impression from these two boys that all these defendants named in the warrant were implicated in the larceny and issued the warrant accordingly.

"The witness issued the warrant on his own judgment, after examining the two boys; he always exercised his own judgment as to whether to issue a warrant or whether to refuse it. The witness does not remember whether each of these two boys implicated the plaintiff in this case. The warrant was issued probably three or four days before the preliminary trial."

The warrant was executed within a few days, and the defendants named in it brought before the commissioner. On the hearing Bowling was discharged on the grounds, as the commissioner states, that, although he was in the crowd, the evidence did not disclose that he took any of the goods. The facts disclosed by the plaintiff's witnesses on the trial of the present case were substantially in accord with the foregoing. The plaintiff, Bowling, was arrested on the warrant by Peerman, who was deputized by the commissioner to execute it. He was carried before the commissioner, where he was admitted to

bail; his mother becoming his surety for his appearance at the preliminary trial which took place a few days thereafter.

It was in evidence that the plaintiff was a youth of good character, and he testified that he had no part in taking the articles from the car. He also stated that he did not know Peerman anterior to the time of his arrest, and that he did not think Peerman knew him.

· In this action the ordinary declaration under the system of pleading in West Virginia was filed by the plaintiff against Walker D. Hines, Director General of Railroads, and it was alleged in substance that the defendant, contriving and maliciously intending to ruin and injure the plaintiff, and to cause him to be arrested and held in custody for a long space of time, and to cause the said plaintiff to be fined and imprisoned, and thereby impoverish, oppress, and annoy him, on the 2d day of August, 1918, in the county of Mercer, Southern district of West Virginia, by and through his officer, agent, and employé, C. D. Peerman, caused and procured Powell to appear before the United States commissioner, and falsely and maliciously, without any reasonable or probable cause whatsoever, charge the plaintiff and others, who were named in the warrant, with unlawfully stealing, taking, and carrying away three rain coats, ten cartons of cigarettes, and one box of chewing tobacco, which property was then in possession of the railroad in interstate shipment. The demand of the plaintiff was for $10,000 damages, by reason of injury to his credit and reputation, the mental anguish suffered, and the shame and humiliation brought upon him, etc.

The defendant filed a demurrer, which was overruled; this was followed by a special plea, which was also overruled, and the defendant excepted. The defendant entered his plea of not guilty, and the issue was thus joined.

The following instructions requested by plaintiff's counsel were given by the court to the jury:

"The court instructs the jury that, if they believe from the evidence in this case that the witness C. D. Peerman falsely and maliciously, and without reasonable or probable cause therefor, instigated or procured the prosecution of the plaintiff under the warrant introduced as evidence in this case, and that in so doing the said C. D. Peerman was acting for and on behalf of the defendant, within the scope of his employment, that then they shall find in favor of the plaintiff.

"And the jury is further instructed that probable cause means a state of facts actually existing, known to the prosecutor personally, or by information derived from others, which would justify the prosecution, that is, which in the judgment of the jury would lead a reasonable man of ordinary caution, acting conscientiously upon these facts, to believe the person guilty; and that by malice is meant, not what this word imports when used in common conversation, nor yet in its classical meaning, but the legal and technical meaning, that is, some motive other than the desire to secure the punishment of the person believed by the prosecutor to be guilty of the offense charged, or by any other sinister or improper motive."

"The court instructs the jury that while, in an action for malicious prosecution, it must appear that the prosecution was malicious, yet, if the evidence shows that the defendant put on foot said prosecution without probable cause, that then malice may be inferred by the jury from the want of probable cause and without further proof."

"The court instructs the jury that, if they believe from the evidence in this case that the plaintiff is entitled to recover, then the measure of plaintiff's damages is such an amount as the jury will find will fully compensate the plaintiff for the injury sustained not to exceed the sum of ten thousand ($10,000) dollars."

The defendant's counsel objected to the giving of the instructions above recited, because the evidence was not sufficient to justify submitting the question therein to the jury, and also objected to the definition of probable cause as given by the court in the said instructions. The court overruled these objections, and the defendant, through counsel, then and there excepted separately to the several instructions given by the court and also the action of the court in overruling defendant's objections.

The jury returned a verdict in favor of the plaintiff and assessed his damages at $1,500, for which judgment was entered, together with the costs of the case.

H. T. Hall, of Roanoke, Va. (G. A. Wingfield, of Roanoke, Va., Williams, Loyall & Tunstall, of Norfolk, Va., McNutt, Ellett & McNutt, of Princeton, W. Va., and Hall, Wingfield & Apperson, of Roanoke, Va., on the brief), for plaintiff in error.

Hugh G. Woods and John R. Pendleton, both of Princeton, W. Va., for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge (after stating the facts as above). In the discussion of the case the defendant in error will be referred to as plaintiff, and the plaintiff in error as defendant.

In the inception of this case the proposition suggests itself that, when the transaction upon which the plaintiff bases his cause of action took place, the railroad from which the stolen articles were taken was being operated by the Director General of Railroads, acting by authority of the President of the United States, who had taken possession and control of this railroad, among other lines of transportation in the country, under acts of Congress authorizing such action, to aid in carrying on the war with Germany. The question which arises is whether or not, under such circumstances, malice or wrongful motive can be imputed to the Chief Executive, who was performing an official function, or to the Director General, his alter ego, and made the ground of damages at the instance of an individual in a suit against the latter. However, this proposition was not relied upon, nor argued by defendant's counsel, and we do not deem it necessary to pass upon it in order to dispose of the case. We are of the opinion that, upon the undisputed facts disclosed by the testimony, the trial judge should have dismissed the case, or directed a verdict for the defendant.

[1] It is well settled that there must be two essential concurring elements in order to authorize a recovery in a suit seeking damages for malicious prosecution, and these essential elements are malice and want of probable cause. Beginning with the Supreme Court of the United States, the American decisions generally are in entire harmony to the effect that, in order to maintain an action seeking damages for malicious prosecution, these two essentials must exist. Mr. Justice Hunt, delivering the opinion of the court in Stacey v. Emery, 97 U. S. 642, 24 L. Ed. 1035, quotes from Munns v. Dupont De Nemours, 3 Wash. C. C. 37, Fed. Cas. No. 9926, as follows:

"If malice is proved, and yet probable cause exists, there is no liability. Malice and want of probable cause must both exist," to justify an action.

"To make out a cause of action in malicious prosecution, malice and want of probable cause must concur. It is not sufficient to show merely that the action was maliciously prosecuted; it must also appear that it was commenced or continued without probable cause." 26 Cyclopedia of Law and Procedure, 21.

We do not deem it necessary to cite further from the numerous authorities in this country which sustain the principle. We may say, however, that the doctrine is not confined to the United States, but is also the law in England. As far back as the case of Farmer v. Darling, 4 Burr. 1791, cited in Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116, which was a malicious prosecution case, Lord Mansfield instructed the jury "that the foundation of the action was malice," and all the judges concurred that "malice, either express or implied, and the want of probable cause, must both concur."

[2] The case presents itself in another view, which, when considered in accordance with the facts and applying the rule of law as we understand it, prevents recovery of damages. Peerman did not proceed to have Bowling arrested upon his own initiative, but he laid the case, with the evidence he had obtained, before the commissioner, and if the commissioner, acting on his own judgment, made a mistake in issuing the warrant, neither Peerman, the agent, nor the Director General, as the principal, would be chargeable with damages. This position is sustained in the case of Oakley v. Tate, 118 N. C. 233, 24 S. E. 806.

There is nothing in the evidence to warrant the conclusion or raise the presumption that Peerman was prompted by any sinister or improper motive in the action he took in the investigation of the alleged theft. There are no facts or circumstances disclosed showing or tending to show that he had prejudice or ill will toward Bowling; indeed, it is developed from the testimony that he did not know Bowling, and Bowling was not acquainted with him, anterior to the time they met at Princeton on the occasion of the investigation. We go further, to say that Peerman, instead of showing unnecessary zeal, it seems to us, acted in a very prudent and cautious manner. When he was informed that Belcher had been seen with some of the stolen cigarettes, he sought him, and learned from him that Powell had also taken articles from the car. Peerman then interviewed Powell, and from the two he learned the names of the others who were present at work about the car when the property was stolen.

We think these facts, with other circumstances connected with the offense which were brought to Peerman's knowledge, were adequate to negative any presumption of malice or improper purpose in the action he took. It is not denied that plaintiff was present and saw what was going on, nor is it suggested that he discountenanced or undertook by word or act to prevent the theft. Under such circumstances an honest belief that plaintiff participated in the theft was not at all unreasonable. Yet, instead of making an affidavit himself upon information and belief, he carried Belcher and Powell before the commissioner, who himself examined them, and upon their statements he formed his conclusion as to those engaged in the theft. The commissioner acted on his own judgment, took the affidavit of Powell, and issued his warrant for the arrest of those he believed to have been participants in the offense, and among them the plaintiff.

It is not necessary, in our opinion, to discuss specifically the exceptions of defendant's counsel to the instructions given by the court

to the jury, for there was no evidence sufficient to warrant a verdict for the plaintiff, even under these instructions. Our conclusion is that there should be a reversal of the judgment of the trial court, and the case remanded, in order that a new trial may be granted, and further proceedings had therein in accordance with the views we express.

Reversed.