BETTY HENSLEY v. WILLIAM M. WALLEN, RUSSELL HENSLEY
AND SHELBY LEE SILVERS.

(Filed 26 September 1962)

**1. Automobiles §§ 25, 38—**

Where there is no allegation or evidence that the scene of the acci-
dent was in a business or residential district or that any signs had been
posted giving notice of any special speed restriction, it is error for the
court to permit a witness to testify and to charge the jury on such testi-
mony, that the speed at the scene of the accident was limited to a speed
less than the general statutory maximum, even though the scene is with-
in the boundaries of a municipality. G.S. 20-141(a), G.S. 20-141(b)(4).

**2. Same—**

Whether speed is limited at a particular locality to a speed less than
the general statutory maximum is a mixed question of law and of fact,
and while a witness may testify as to the posting of signs restricting the
speed limit, and as to the frontage of residences and business establish-
ments from which it may be determined whether the area is a business
or residential district, a witness may not invade the province of the
jury by testifying as to a particular speed limit less than the general
statutory maximum.

APPEAL by defendant Wallen from *Huskins, J.,* May 1962 Regular
Term of BUNCOMBE.

In this action plaintiff seeks to recover damages for personal in-
juries which she alleged were proximately caused by the negligence
of defendant Wallen. Her evidence tends to show the following facts:

On June 28, 1960, about 6:30 P. M., she was a passenger in the Pon-
tiac automobile being operated by her husband, Russell Hensley, the
additional defendant, in the City of Asheville, on Patton Avenue.
It was raining at the time and the pavement was wet. In the area
involved, Patton Avenue is a straight four-lane highway. A median
strip separates two eastbound traffic lanes and two westbound lanes.
The Hensley car entered Patton Avenue from Hazel Mill Road on
the north, crossed the north lane for westbound traffic and proceeded
west in the south lane next to the median strip. At the time the Hens-
ley car entered Patton Avenue the Wallen automobile was from 400
to 600 feet east of the intersection traveling west at a speed of about
fifty miles per hour. Immediately upon entering Patton Avenue the
plaintiff's husband gave a left-turn signal with his hand. After he
had traveled about 200 feet west to the point where Hazel Mill Road
intersects Patton Avenue from the south, he stopped in the median
strip with about three feet of the Pontiac protruding into the south
lane while he waited for traffic going east to pass so that he could pro-
ceed south on Hazel Mill Road. While thus stopped the Pontiac was

struck on the left rear by the front of defendant's Chevrolet. In the collision plaintiff sustained a muscle sprain to the neck. At the time of the accident title to the Pontiac in which plaintiff was riding was in the name of S. L. Silvers to whom plaintiff had sold it. After the accident, defendant Silvers transferred the title back to her. Plaintiff's husband testified that the automobile was his but he carried title to all of his automobiles in his wife's name.

The evidence of defendant Wallen tended to show that he was operating his Chevrolet automobile westerly on Patton Avenue in the inside lane at a speed of from thirty to thirty-five miles per hour; that when the Hensley car came into Patton Avenue from the Hazel Mill Road it proceeded west in the north or outside lane at a speed of from twenty to thirty-five miles per hour; that without giving any signal whatever, the driver of the Pontiac automobile made a ninety-degree turn across the south lane in which the defendant was traveling when he was from two to eight-car lengths away; that behind the two automobiles there were other cars traveling west in both lanes and if the Chevrolet had turned either way it would have had to have been onto the median strip, estimated to be from six to twelve feet wide with posts in the center; and that at the time the Chevrolet hit the left rear of the Pontiac, the Pontiac was "crossing in the cross-over" and was crossways the inside lane.

Plaintiff's husband, Russell Hensley, and Shelby Lee Silvers were made additional parties defendants. At the close of the evidence the original-defendant Wallen took a voluntary nonsuit as to the additional-defendant Silvers. The jury found the plaintiff had been injured by the negligence of Wallen; that the additional-defendant Hensley was not negligent; that plaintiff did not own the Pontiac; and that plaintiff was entitled to damages in the sum of $2,000.00. From judgment entered on the verdict the defendant appealed.

*W. Harold Sams for plaintiff appellee.*
*Williams, Williams and Morris for defendant appellant.*

SHARP, J.    The defendant excepted to the admission in evidence of the plaintiff's statement that the speed limit at the time and place of the accident was thirty-five miles per hour and to those portions of the charge based upon that evidence. These exceptions are the bases of defendant's assignments of error Nos. 2, 3, 18, 19 and 20.

In her specifications of negligence plaintiff alleged that defendant Wallen was operating his automobile at a speed which was excessive under the existing conditions in violation of G.S. 20-141(a). She made no other allegation with reference to his speed. She did not allege that

the approach to the scene of the collision was either a business or a residential district or that the proper authorities had posted any signs giving notice of any determined speed limit for the area. Thus G.S. 20-141(a) and (b)4 were pertinent in judging the conduct of the defendant. *Bobbitt v. Haynes*, 231 N.C. 373, 57 S.E. 2d 361.

In answer to a question from her counsel as to whether there had been any changes in highway conditions at the scene of the collision since the accident, plaintiff said, "Yes, the speed limit has been changed. It was 35 at the time and now it is 45." The defendant's motion to strike this answer was denied.

It is noted that plaintiff did not say there was a *posted sign* in the area limiting speed to thirty-five miles per hour. She merely said the speed limit "was 35." This statement constituted the only evidence in the record from which the jury might have found that the law had fixed a maximum speed limit of less than fifty-five miles per hour on Patton Avenue. No inference of a lesser limit arises from the fact that the collision occurred in the city limits. The record is silent as to whether the area constituted a business or a residential district as defined by the statute.

In his recapitulation of the evidence the judge told the jury that plaintiff said thirty-five miles per hour was the posted speed limit on Patton Avenue at that point at that time and, in stating the contentions, he said that plaintiff contended that defendant was driving fifty miles per hour "when the posted maximum speed out there was 35 miles per hour." Thereafter he gave the following mandate:

"The court instructs you that if the plaintiff has satisfied the jury from the evidence in this case, and by its greater weight, that the maximum lawful speed at the point of collision was 35 miles per hour, and that Wallen was driving at a speed in excess of the maximum lawful speed limit, or that regardless of the speed limit that Wallen was driving at a speed which was greater than was reasonable and prudent under the condition then existing, and has further satisfied you by the greater weight of the evidence that his driving in either of those respects was the proximate cause, or one of the proximate causes of the collision which ensued, and of the injuries which she sustained, then that would amount in law to actionable negligence on the part of William M. Wallen, and it would be your duty to answer the first issue YES."

In our opinion the admission of this evidence and the charge with reference to it constituted prejudicial error.

Over objection, a witness may not testify what the maximum speed

permitted by law is for a given area. What is the speed limit is a mixed question of fact and law, except where the State Highway Commission or local authorities, pursuant to the statute, have determined a reasonable and safe speed for a particular area and have declared it by erecting appropriate signs. The answer to the question, "What is the maximum speed permitted by law for a given area?" depends upon whether that area is a business or residential district as defined by G.S. 20-38(a) and (w)1, or "places other than those," G.S. 20-141(b)4. In the absence of a stipulation, it is necessary to prove the character of the district before the maximum speed permitted by law can be determined. Frequently the nature of a particular district cannot be satisfactorily proven without detailed measurements of the buildings fronting the highway for the required distance. To permit a witness to say what a speed limit was for a particular area at a given time is to allow him to give his inferences from facts which he has observed. Such testimony violates the opinion rule and invades the province of the jury. *Mason v. Gillikin*, 256 N.C. 527, 124 S.E. 2d 537; Stansbury, North Carolina Evidence, Secs. 122 and 123. Of course, if a highway sign declaring the speed limit to be thirty-five miles per hour had been posted in the area, it would have been competent for the witness to say so, describe the sign, and testify as to its location. When such a sign is present, nothing else appearing, there is a logical inference that it was erected by the proper authorities pursuant to G.S. 20-141. *Smith v. Buie*, 243 N.C. 209, 90 S.E. 2d 514.

There was neither allegation nor competent evidence upon which the jury might find that the maximum legal speed for Patton Avenue in the area in question was thirty-five miles per hour. There was no evidence that defendant was exceeding fifty-five miles per hour. Therefore, the prejudicial effect of that portion of the quoted charge is apparent. *Brady v. Beverage Co.*, 242 N.C. 32, 86 S.E. 2d 901.

The defendant makes several assignments of error to the charge with reference to the issue of plaintiff's ownership of the Hensley automobile. However, the jury's finding that the operator, the additional-defendant, was not negligent renders these assignments moot on this appeal. These and the other assignments of error relate to matters which may not reoccur upon another trial.

For the reasons stated the defendant is entitled to a new trial, it is so ordered.

New trial.