FURMAN GREENE v. MARY ANNE MEREDITH.

(Filed 7 April, 1965.)

1. **Trial § 21—**
   On motion to nonsuit, plaintiff's evidence, together with so much of defendant's evidence as is favorable to plaintiff, will be considered in the light most favorable to plaintiff, while defendant's evidence which tends to contradict or impeach plaintiff's evidence will be disregarded.

2. **Automobiles § 41g—**
   Evidence favorable to plaintiff tending to show that defendant approached the intersection with the traffic control signal on green, in heavy fog, in a 35 mile per hour zone, at a speed of some 35 to 50 miles per hour, and, upon seeing plaintiff's car, which had approached from the opposite direction, making a left turn, applied her brakes and skidded for a distance of some 93 feet and collided with the right front of plaintiff's car, which had turned left into defendant's lane of travel, *held* sufficient to be submitted to the jury on the issue of defendant's negligence. G.S. 20-155(b).

3. **Automobiles § 42h—**
   Evidence tending to show that plaintiff, faced with a green traffic control signal, approached an intersection in heavy fog, that before attempting to make a left turn at the intersection he stopped and looked down the highway and, seeing no approaching car, put his automobile in low gear and entered the intersection at a speed of 10 miles per hour, and that, as he was attempting to make a left turn into the intersecting street, he was struck by defendant's car which had approached from the opposite direction at excessive speed, *is held* not to show contributory negligence on the part of plaintiff as a matter of law.

4. **Negligence § 1—**
   A person is required to exercise that degree of care which a reasonably prudent person would exercise under like circumstances, the standard of care being constant while the degree of care varies with the exigencies of the occasion.

5. **Automobiles § 7—**
   A motorist is required not merely to look but to keep a lookout in his direction of travel so as to avoid collision with vehicles or persons on or near the highway, and will be held to the duty of seeing what he ought to have seen.

**6. Negligence § 26—**

Nonsuit for contributory negligence is proper only when plaintiff's evidence, considered in the light most favorable to him, discloses contributory negligence so clearly that no other reasonable conclusion can be drawn therefrom.

**7. Trial § 22—**

Discrepancies and contradictions, even in plaintiff's evidence, do not warrant nonsuit.

**8. Automobiles § 38;    Evidence § 16—**

It is prejudicial error to admit evidence of defendant's excessive speed some two miles from the collision when there is no evidence that defendant continued to maintain such speed to the scene of the collision.

APPEAL by defendant from *Froneberger, J.,* September 1964 Session of RUTHERFORD.

Action *ex delicto* to recover for personal injuries and damage to an automobile sustained in a collision in an intersection between plaintiff's automobile and an automobile driven by defendant.

Defendant in her answer denies that she was negligent, conditionally pleads contributory negligence of plaintiff as a bar to any recovery by him, and alleges a counterclaim for damages for personal injuries.

The jury by its verdict found that plaintiff was injured and his automobile was damaged by defendant's negligence, that plaintiff did not by his negligence contribute to his injuries and damages to his automobile, left unanswered the issue "was the defendant injured by the negligence of the plaintiff," and awarded plaintiff $500 for personal injuries and $850 for damages to his automobile.

From a judgment on the verdict, defendant appeals.

*Keener and Butner and Stover P. Dunagan by Hurshell H. Keener for defendant appellant.*

*Hamrick & Jones by Fred D. Hamrick, Jr., for plaintiff appellee.*

PARKER, J.   Both parties introduced evidence. Defendant assigns as error the denial of her motion for judgment of compulsory nonsuit of plaintiff's action renewed at the close of all the evidence.

The following facts are shown by judicial admissions in the pleadings and by uncontradicted evidence:

U. S. Highway #64 runs east-west, and passes straight through the town of Ruth. U. S. Highway #74 enters U. S. Highway #64 in the town of Ruth from the south, and at its intersection with U. S. Highway #64 it makes a 90-degree left turn, and proceeds west on U. S. Highway #64 as one highway numbered U. S. Highways #64 and #74. At this intersection there are signal lights which turn from green to

yellow to red to control vehicular traffic, erected and maintained pursuant to a duly enacted ordinance of the town of Ruth. About 9:30 a.m. on 1 February 1964, plaintiff was driving his automobile in a westerly direction along U. S. Highway #64 in the town of Ruth and approaching its intersection with U. S. Highway #74. About the same time, defendant driving an automobile owned by Peggy Mowery, who was a passenger therein, was traveling east on U. S. Highway #64 and #74 and approaching their intersection with U. S. Highway #74. At the time of the collision in the intersection between plaintiff's automobile and the automobile driven by defendant, the signal light at the intersection was green for traffic traveling west on U. S. Highway #64 to and through the intersection, and also green for traffic traveling east on U. S. Highways #64 and #74 to and through the intersection. Both highways are main-traveled highways, and both are hard surfaced, 20 feet wide.

Plaintiff's evidence, considered in the light most favorable to him, *Scott v. Darden*, 259 N.C. 167, 130 S.E. 2d 42, shows the following facts:

Where U. S. Highway #74 intersects U. S. Highway #64, U. S. Highway #74 is about 45 feet wide and in its center there is a raised concrete traffic island with an overhead traffic light to control traffic. As he approached the intersection, U. S. Highway #64 is straight and slightly downhill, and on a clear day one can see as he nears the intersection as much as 300 or 400 feet ahead down U. S. Highway #64 and U. S. Highways #64 and #74. On this morning there was a heavy fog. He intended to turn left in the intersection and proceed south on U. S. Highway #74. When he came to within about 20 to 40 feet of the intersection, he stopped his automobile, looked ahead down U. S. Highways #64 and #74 and saw nothing. His lights were on low beam. His left turn signal light was on. He put his automobile in low gear and entered the intersection at a speed of ten miles an hour on the east side of the signal light. He then turned to his left to proceed south on U. S. Highway #74, and when the front end of his automobile had crossed the center of the highway two and one-half or three feet, he saw within two or three feet of him an automobile on his right traveling east straight through the intersection from U. S. Highways #64 and #74. The left front part of this automobile driven by defendant collided with the right front part of his automobile. His automobile was moved two or three feet by the impact. The automobiles stayed together.

J. C. Walker, a witness for plaintiff, stopped the taxicab he was driving on U. S. Highway #74 at the stop light at its intersection with U. S. Highway #64. He saw the collision. He testified in part: "As the light changed to yellow I eased up and looked to the left and saw the car being operated by Miss Meredith approaching from my left. I saw

her car about 150 feet away. The car was coming probably 40 to 50 miles per hour. It was heavy fog there. Miss Meredith's car was skidding. I don't know how far. I didn't look to my right and didn't see the Greene car. The accident happened right in front of my cab. Glass and stuff flew and hit my cab. It was a tremendous impact. The car driven by Miss Meredith crashed into the Greene car. * * * The point of impact was south of the center line and in the lane for eastbound traffic. On this morning you could see 150 to 200 feet down Highway 64-74, and I saw the defendant's car about 150 feet west of the intersection."

Defendant was driving a white Corvair. Paul G. Albergine, a State highway patrolman, arrived at the scene of the collision shortly after it occurred. He testified: "It was a very heavy foggy morning and was also very heavy in the area of the collision. There were skid marks on U. S. Highway #74 and #64 as they approach the intersection going east and they led up to the white Corvair. The skid marks leading up to the Corvair were 93 feet long. * * * The impact was in the defendant's lane of travel and took in the whole center towards the southwest of the highway. * * * This intersection is within the town of Ruth and the speed limit is 35 miles per hour."

Defendant's evidence shows the following facts:

Fern Blankenship was driving his automobile two or three car lengths behind plaintiff's automobile, and saw the collision. He testified: "He [plaintiff] was starting to turn left. I did not see any signal. In turning he was angling across to turn left at the island. He started angling in front of the store. Just as he started to turn left it looked to me as if he had speeded up some. I saw the collision. At the time of the collision Mr. Greene's car had crossed into the left-hand side. * * * It was a foggy morning and the fog was very dense. I could see about 10 — 15 car lengths."

Defendant was driving a Corvair automobile owned by Peggy Mowery, who was a passenger, from Greenville, South Carolina, to Blowing Rock, North Carolina, for a week end of skiing. She testified: "I was driving the car as we approached the town of Rutherfordton and Ruth. The weather was foggy. It had been raining in Greenville but was misting a little bit in Rutherfordton; however, it wasn't raining. We were traveling east on Highway 64 and were going to go through the intersection and continue on 64. As we approached the intersection we could see 175 feet to 200 feet in front of our car. The lights on our vehicle were on dim. As I approached the intersection I saw a car at the intersection and that it had stopped. I observed the car, but I didn't see any indication of it turning. It was sitting there so I proceeded through the intersection, and just as I did the car turned and I hit it. * * * Before I got to it I saw him start to turn and I applied my brakes. I

started sliding. I tried to turn the wheels so I could slide sideways instead of head-on, which I did. At the time of the collision his vehicle was on my side of the road, *i.e.*, the east side. In crossing the intersection the plaintiff started turning in front of me. He was sitting there and the next moment he was turning. * * * I was back about 200 feet when I first saw Mr. Greene's car. I was going approximately 35 miles an hour when I first put on my brakes."

In the collision both automobiles were damaged, and both parties received personal injuries.

Considering plaintiff's evidence in the light most favorable to him, and so much of defendant's evidence as is favorable to him, and ignoring defendant's evidence which tends to contradict or impeach the evidence of plaintiff, as we are required to do in ruling upon a motion for an involuntary judgment of nonsuit, *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307, the jury could find the following facts: Plaintiff was already in the intersection giving the statutory left turn signal and making a left turn to enter U. S. Highway #74 and proceed south at a time when defendant in a dense fog was at least 93 feet away from the intersection and approaching it at a speed of 35 to 40 to 50 miles an hour. That when defendant saw plaintiff's automobile in the intersection making a left turn, she applied her brakes and skidded 93 feet and crashed into plaintiff's automobile in the intersection. That defendant under all the attendant circumstances was driving the automobile, as alleged and as shown by plaintiff's evidence and her own evidence favorable to him, without due caution and circumspection and at a speed and in a manner so as to endanger or be likely to endanger any person or property on the highway, and by such driving of the automobile was unable to delay her entrance into the intersection until plaintiff had cleared it entirely, G.S. 20-155(b), *Mayberry v. Allred,* 263 N.C. 780, 140 S.E. 2d 406, and that defendant was negligent in the operation of the automobile, and such negligence was a proximate cause of plaintiff's injuries and damage to his automobile.

Defendant contends that plaintiff's own evidence shows that he was guilty of legal contributory negligence. Defendant alleges in his answer that plaintiff was guilty of negligence in the following respects, which proximately contributed to his injuries and damage: (1) He was guilty of reckless and careless driving as defined in G.S. 20-140; (2) he drove his automobile at a speed greater than was reasonable and proper under the circumstances; and (3) he failed to keep a proper lookout, failed to keep his automobile under control, and failed to avoid a collision with defendant's automobile and to yield the right of way to defendant's automobile, which was well into the intersection.

Plaintiff's evidence tends to show there was dense fog at and near the intersection and that he entered the intersection with his left turn signal on when defendant was at least 93 feet away. When he came to within 20 to 40 feet of the intersection, he stopped his automobile and looked ahead down U. S. Highways #64 and #74 and saw nothing. His lights were on low beam. He put his automobile in low gear and entered the intersection at a speed of ten miles an hour. He turned left to proceed south on U. S. Highway #74, and when the front end of his automobile had crossed the center of the highway two and one-half or three feet, he saw within two or three feet of him defendant's automobile skidding into him. Defendant's witness Fern Blankenship testified, "I could see about 10 — 15 car lengths." There is no evidence plaintiff was driving his automobile at an excessive speed.

It is true J. C. Walker, a witness for plaintiff, testified he saw defendant's car 150 feet away, and defendant testified she could see 175 to 200 feet in front of the car she was driving.

The evidence is conflicting as to the distance a car could be seen from another car in the dense fog, which presents a jury question.

The standard of care is always the conduct of the reasonably prudent man. The rule is constant while the degree of care which a reasonably prudent man exercises or should exercise varies with the exigencies of the occasion. *Raper v. McCrory-McLellan Corp.*, 259 N.C. 199, 130 S.E. 2d 281. For instance, what would constitute a proper degree of care in turning left in an intersection in clear weather would not be adequate in making such a turn in a dense fog. It is hornbook law that it is the duty of a motorist to exercise that degree of care which an ordinarily prudent person would exercise under similar circumstances. And in the exercise of such duty he is required not merely to look, but to keep a lookout in his direction of travel, and he is held to the duty of seeing what he ought to have seen, so as to avoid collision with vehicles or persons upon the highway. *Clontz v. Krimminger*, 253 N.C. 252, 116 S.E. 2d 804.

Considering plaintiff's own evidence in the light most favorable to him, it does not show plaintiff is guilty of contributory negligence so clearly that no other conclusion can be reasonably drawn therefrom. *Short v. Chapman*, 261 N.C. 674, 136 S.E. 2d 40. Plaintiff has not proved himself out of court. *Lincoln v. R. R.*, 207 N.C. 787, 178 S.E. 601.

It is elementary that discrepancies and contradictions even in plaintiff's evidence are matters for the jury and not the judge. *Lincoln v. R. R., supra*.

The trial court properly overruled the motion for judgment of compulsory nonsuit, and correctly submitted the issues of negligence and contributory negligence to the jury.

Defendant assigns as error that plaintiff was permitted over his objection to offer evidence that before the collision defendant was driving the Corvair automobile on U. S. Highway #221 about two miles below Rutherfordton in a heavy fog at a speed of 50 to 60 miles an hour, and that a volunteer in the Life Saving Department in Rutherfordton had a flashlight in his hand and had to run out of the road. The brief of counsel for defendant states that about two miles below Rutherfordton is about three miles from the scene of the collision. The brief for plaintiff states:

"It is a matter of common knowledge that the Town of Rutherfordton is a very small town and the Town of Ruth is a still smaller town, and that their corporate limits adjoin. As the defendant proceeded along Highway #74 out of the Town of Rutherfordton and into the Town of Ruth she crossed immediately from one town to the other, and the accident occurred shortly after she entered the city limits of the Town of Ruth.

"From the testimony hereinabove set forth, that is, the testimony of the defendant, and Peggy Mowery, it is quite clear that after the defendant was stopped by the rescue squad she proceeded on for a short distance through the Town of Rutherfordton and to the point of collision."

There is no evidence in the record from which a jury could reasonably infer that such a speed of 50 to 60 miles an hour continued to the scene of the collision. Its admission in evidence was prejudicial error which entitles defendant to a new trial. *Corum v. Comer,* 256 N.C. 252, 123 S.E. 2d 473, and cases cited.

New trial.