BARBARA BURNETT PAGE v. WILLIAM WENTING TAO

No. 8115SC629

(Filed 6 April 1982)

1. **Automobiles § 50— driving at unreasonably slow speed—evidence of negligence sufficient—entry of judgment n.o.v. improper**

In an action arising from an automobile accident, the trial judge erred in entering judgment n.o.v. for defendant since the evidence was sufficient to justify a verdict in plaintiff's favor. Defendant violated G.S. 20-141(h) when he drove on an interstate highway at a speed of between eight and ten miles per hour, failed to warn of his slow speed, and decided to remain on the interstate knowing he had car trouble.

2. **Automobiles § 88— contributory negligence—judgment n.o.v. properly denied**

The trial court properly denied defendant's motion for judgment n.o.v. on grounds plaintiff was contributorily negligent where the evidence tended to show that plaintiff was five or six car lengths behind a truck travelling at fifty-five miles per hour in the right hand lane of an interstate highway; that the day was clear and the road was dry; that she was followed by another tractor-trailer; that as the truck in front signaled to change lanes, so did plaintiff; that another truck was to her left; that when plaintiff looked in front of her, she was confronted for the first time with defendant's car which was mov-

ing six to eight miles per hour in the lane ahead of her; and that thus "boxed in" she hit her brakes and skidded to the left into a tractor-trailer.

**3. Automobiles § 45.3— evidence concerning failure to stop automobile at scene of collision properly admitted**

Evidence that a defendant failed to stop his automobile after being involved in a collision is some evidence of negligence and was properly admitted.

**4. Automobiles § 45.2— evidence of minimum speed limit properly admitted**

The trial court properly denied defendant's conditional motion for a new trial on the ground that testimony as to the minimum posted speed or the minimum speed where posted was irrelevant and inadmissible since the trial court did not charge on the minimum speed statute, G.S. 20-141(c), there was evidence of defendant's slow speed that ranged from six miles per hour to forty miles per hour, and there was competent evidence of posted minimum and maximum speeds.

**5. Automobiles § 90— failure to instruct concerning plaintiff's duty to move in safety proper**

The trial court properly failed to instruct concerning the duty of a motorist to determine that a movement can be made in safety before turning from a direct line of travel where the evidence tended to show that plaintiff's movement entirely into the left lane of travel was involuntary in nature, prompted solely by her emergency braking, and caused by defendant's slow speed in plaintiff's lane of travel.

Judge HEDRICK concurring in part and dissenting in part.

APPEAL by plaintiff and defendant from *Brewer, Judge.* Judgment entered 23 January 1981 in Superior Court, ORANGE County. Heard in the Court of Appeals 11 February 1982.

On 19 December 1980, judgment was entered for plaintiff in accordance with a jury verdict awarding plaintiff damages for injuries she received in an automobile accident caused by defendant's negligence in operating his vehicle on a public highway at such a slow speed as to impede the normal and reasonable flow of traffic. Pursuant to G.S. § 1A-1, Rule 50(b), defendant, on 23 December 1980, filed his alternative motion for judgment notwithstanding the verdict or a new trial. On 23 January 1980 the trial court granted defendant's motion for judgment notwithstanding the verdict, saying it is

ORDERED (1) that the verdict and the judgment entered thereon be set aside and that judgment be entered for Defendant on the grounds that no evidence has been offered or received upon the trial tending to prove that Defendant was

guilty of any negligence, said motion being denied on the grounds that Plaintiff was guilty of contributory negligence which was the sole cause of her injuries or at least a contributing proximate cause of her injuries as a matter of law; and it is further ORDERED (2) that in the event that judgment for Defendant to be entered herein is reversed on appeal, Defendant's alternative motion for a new trial be and the same is hereby denied on the grounds that no errors were committed at the trial as asserted in Defendant's motion for a new trial . . . .

From that portion of the judgment stating that there was no evidence that defendant was guilty of any negligence, plaintiff appealed. From that portion of the judgment stating that plaintiff was not contributorily negligent as a matter of law and denying defendant's alternative motion for a new trial, defendant appeals.

*Coleman, Bernholz, Dickerson, Bernholz, Gledhill & Hargrave, by Douglas Hargrave and Alonzo B. Coleman, for plaintiff appellant.*

*Newsom, Graham, Hedrick, Murray, Bryson & Kennon, by E. C. Bryson, Jr. and Lewis A. Cheek, for defendant appellee.*

BECTON, Judge.

I

FACTS

On 4 November 1977 plaintiff, who was travelling with her daughter in her Ford Pinto south towards Greensboro in the right hand lane of Interstate Highway 85 (I-85), was severely injured in an automobile accident. In the area where the accident occurred, the road was flat and level, the pavement was dry, the right lane had a twelve-foot wide asphalt shoulder, and a four to five-foot wide shoulder bordered the left lane. Prior to the accident, five vehicles were travelling south towards Greensboro in the following order: defendant's Toyota, Preston Hood's tractor-trailer, plaintiff's Pinto, William Baucom's tractor-trailer, and Ronald Staton's tractor-trailer. Defendant, driving the lead vehicle, was travelling about six to eight (6 - 8) miles per hour; the four vehicles approached defendant's Toyota travelling approximately fifty-five (55) miles per hour.

When Hood, driving the lead tractor-trailer, realized that defendant's Toyota "looked like it was almost stopped," he "whipped" his truck into the left-hand lane to avoid running into the rear of the Toyota. When plaintiff, whose view of the Toyota was blocked by Hood's truck and who was travelling five or six car lengths behind Hood's truck, saw Hood signal to pass, she took her foot from the accelerator and signaled to turn her car into the left-hand lane. Plaintiff then glanced to the left to see if she could change lanes, but she saw, for the first time, a tanker truck driven by William Baucom, which was passing her in the left lane. When plaintiff looked again ahead of her, Hood's truck had moved to the left. Plaintiff saw for the first time defendant's Toyota, which appeared to be stopped in her lane of traffic. Because the Baucom truck was even with her in the left lane and she could not move over, plaintiff hit her brakes attempting to avoid rear-ending the Toyota. She skidded left and was struck twice, first by the Baucom truck passing her and then by Staton's flat-bed truck which was following her.

Plaintiff, thrown from her car, slid across the pavement of I-85, and was seriously injured. Hood and Baucom, who saw the collision in their rear-view mirrors after passing the Toyota, pulled off the left side of the highway. When the Toyota, which was not involved in the collision, continued "chugging" down the road, Hood chased the Toyota on foot, beat on the window, and told defendant to wait until the police arrived. When Hood and Baucom walked toward the scene of the collision, the Toyota pulled away. Hood recorded the Toyota's license number and gave it to the investigating officer.

PLAINTIFF'S APPEAL

[1] Plaintiff captions her one and only argument as follows: "Plaintiff's evidence of defendant's negligence was sufficient to support the verdict, and therefore, the court erred in granting defendant's motion for judgment notwithstanding the verdict." We agree with plaintiff.

In ruling on a motion for judgment notwithstanding the verdict, the trial court must be guided by the same principles and standards applicable to motions for directed verdict. *Dickinson v. Pake*, 284 N.C. 576, 583-85, 201 S.E. 2d 897, 902-903 (1974); *Sum-*

*mey v. Cauthen,* 283 N.C. 640, 648, 197 S.E. 2d 549, --- (1973). The trial court must determine whether plaintiff has made out a prima facie case by presenting evidence sufficient to "justify a verdict in [plaintiff's] favor." *Cutts v. Casey,* 278 N.C. 390, 411, 180 S.E. 2d 297, 307 (1971). In passing upon the sufficiency of the evidence, the trial court's ultimate inquiry is whether the evidence would reasonably satisfy an impartial mind of the truth of the proposition sought to be proved. *See Moore v. Railroad,* 173 N.C. 311, 92 S.E. 1 (1917). The test used is so well known it needs no citation: All the evidence supporting the nonmovant's claim must be taken as true and considered in the light most favorable to the nonmovant; all contradictions, conflicts, and inconsistencies must be resolved in the nonmovant's favor; and the nonmovant must be given the benefit of every reasonable inference which may be legitimately drawn from the evidence.

Having set forth the standards applicable to the granting of a motion for judgment notwithstanding the verdict, we now set forth applicable principles of law, including the legal duties of motorists, and apply these principles to plaintiff's evidence of defendant's negligence.

A motorist must exercise proper care in the way and manner in which he operates his vehicle, proper care being that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances. *Boykin v. Bissette,* 260 N.C. 295, 299, 132 S.E. 2d 616, 619 (1963). Separate and apart from this positive duty imposed by common law are specific statutorily imposed duties on motorists. One such statute applicable to this case is G.S. 20-141(h) which, in pertinent part, reads: "No person shall operate a motor vehicle on the highway at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law . . . ." Violation of the standard of care imposed by G.S. 20-141(h) is negligence *per se. See Bridges v. Jackson,* 255 N.C. 333, 335, 121 S.E. 2d 542, 544 (1961).

Generally, when the evidence is in conflict or more than one conclusion can be drawn from the evidence, the case should be submitted to the jury. *Murray v. Murray,* 296 N.C. 405, 250 S.E. 2d 276 (1979); *Cutts v. Casey;* R. Byrd, *Proof of Negligence in North Carolina,* 48 N.C.L. Rev. 731, 752-53 (1970). Moreover, since

G.S. 20-141(h) does not fix a speed which makes its violation negligence as a matter of law, whether plaintiff's speed was unreasonably slow and whether traffic was impeded are questions of fact to be resolved by a jury.

Defendant strenuously argues that his conduct is excepted from our slow speed statute because of the testimony from Highway Patrolman J. G. George concerning the mechanical difficulty defendant had with his car. Patrolman George testified that he talked to defendant about the circumstances surrounding the accident:

> I asked whether or not he was stopped in the interstate at the time of this accident. He told me that he was coming back from Raleigh, I believe. It was either Raleigh or Durham. He had been having car trouble and he was trying to get his car in. I remember asking how fast did he think he was going coming back. He said he was having trouble with the transmission. He said about 30 miles per hour to 40 miles per hour.

It is true that G.S. 20-141(h) allows a person to operate a motor vehicle at a slower than normal speed "when reduced speed is necessary for safe operation or in compliance with the law." Defendant's evidence that he was experiencing mechanical difficulty does not, as a matter of law, however, except him from coverage under the slow speed statute. As noted by plaintiff in her brief, defendant decided "to remain on the interstate, knowing he had car trouble [and] taking the awesome risk of causing a collision by his slow speed on a fast travelled thoroughfare" instead of pulling over onto the twelve-foot wide asphalt shoulder.

On the issue of defendant's negligence, whether measured by the duty imposed at common law to exercise reasonable care or the statutorily imposed duty not to violate G.S. 20-141(h), we believe that plaintiff has offered sufficient evidence to submit the case to the jury. Although defendant told Patrolman George he was travelling 30 to 40 m.p.h., plaintiff produced eyewitness testimony that defendant's Toyota was "barely moving," going 6 -8 m.p.h." or "stopped." The eyewitnesses testified that they saw no hand signals, no lights, no emergency flashers, no smoke coming from the Toyota, and no warning of any kind to the overtaking traffic.

Prior to and after the collision, the defendant continued to operate his Toyota at a slow speed on the interstate highway. Defendant made no move toward the 12-foot paved shoulder to his right until Hood chased the defendant's car down on foot, hit on his window, and motioned the defendant to pull off the road. When Hood turned to walk back to the scene of the collision, the defendant's car pulled back onto the Interstate and drove away at the same slow rate of speed.

The reasonableness of defendant's action was properly submitted to the jury. Three trucks and the plaintiff's Pinto travelled at a lawful and smooth flow of speed on an interstate highway. From this evidence the jury could clearly find that these travellers expected, on the interstate system, a rapid, smooth, and continuous flow of traffic. The jury was free to determine that the defendant's action in driving at five to ten (5 - 10) miles per hour on the interstate was negligence; that defendant's failure to warn of his slow speed was negligence; and that defendant's decision to remain on the interstate, knowing he had car trouble and taking the risk of causing a collision by his slow speed, was negligence.

The trial court erred in setting aside plaintiff's jury verdict and in granting defendant's motion for judgment notwithstanding the verdict.

DEFENDANT'S APPEAL

[2] Defendant first argues that the trial court erred in failing to grant his motion for judgment notwithstanding the verdict on the additional grounds that plaintiff was contributorily negligent and that her negligence was the sole proximate cause of her injuries as a matter of law. To support his argument, defendant contends that plaintiff was negligent (1) in driving too closely behind Hood's truck; (2) in failing to maintain proper control of her automobile; and (3) in failing to keep a proper lookout. We reject this argument.

It is true that "[c]onstant vigilance is an indispensable requisite for survival on today's highways. . . [and] that the reasonably prudent operator will not put himself unnecessarily in a position which will absolutely preclude him from coping with an emergency." *Beanblossom v. Thomas*, 266 N.C. 181, 187-88, 146

S.E. 2d 36, 41 (1966). Indeed, the space between two vehicles, taking into account such factors as locality, road and weather conditions, "should be sufficient to enable the operator of the car behind to avoid danger in case of a sudden stop or decrease in speed by the vehicle ahead under circumstances which should reasonably be anticipated by the following driver." *Id.* at 188, 146 S.E. 2d at 42. However, the distance need not be such as would permit the following driver to stop or avoid a collision "under any and all eventualities." *Id.*, 146 S.E. 2d at 42.

To direct a verdict on the grounds of plaintiff's contributory negligence, the evidence must be so clear that no other conclusion could reasonably be drawn. *Greene v. Meredith*, 264 N.C. 178, 184, 141 S.E. 2d 287, 292 (1965). We do not believe the evidence offered in this case meets that test. The plaintiff testified that she was five or six car lengths behind Hood's truck travelling at fifty-five (55) miles per hour in the right hand lane of I-85. The day was clear and the road was dry. She was followed by the tractor-trailer driven by Staton. As Hood's truck signalled to change lanes, so did plaintiff. However, Baucom's truck was to her left. When plaintiff again looked in front of her, she was confronted for the first time with defendant's car moving six to eight (6 - 8) miles per hour in the lane ahead of her. Thus "boxed in" she hit her brakes and skidded to the left. We think the judge correctly submitted the issue of contributory negligence to the jury. We find support in *Beanblossom* in which the plaintiff's car was struck head-on by a car that crossed the center line at approximately 2:00 a.m. one rainy morning. The plaintiff's car was struck again by a tractor-trailer that had been following either one car length behind, according to plaintiff's witness, or 85 - 150 feet behind, according to the testimony of the truck driver. Plaintiff's theory was that the truck driver had been following too closely. The *Beanblossom* Court said whether 85 - 150 feet was following too closely under the circumstances of the case was for the jury to say as the " 'sole judges of the facts.' " 266 N.C. at 189, 146 S.E. 2d at 42.

Defendant next argues that "the trial court erred in failing to conditionally grant his motion for a new trial. . . ." Defendant contends that the trial court committed the following prejudicial errors during the course of the trial: (a) admitted testimony concerning defendant leaving the scene of the accident; (b) admitted

general testimony concerning the minimum speed on interstate highways without requiring witnesses to testify specifically about the posted speed at the scene of the accident; (c) failed to instruct the jury on the duty of a driver to determine if a safe movement could be made before turning his vehicle from a direct line of traffic; (d) admitted testimony that plaintiff had a 20-25% disability of her arm, and restricted defendant's questioning of witnesses with regard to whether plaintiff was wearing a seat belt. Defendant has not persuaded us that he is entitled to a new trial.

[3]   A. Prior to trial, defendant moved to exclude evidence that he continued driving south on I-85 after the accident; that two of the truck drivers, Baucom and Hood, ran to catch defendant's car, beat on the window and told defendant to stop and to wait for the police; that defendant then stopped momentarily before driving away; and that Hood recorded defendant's license plate number and gave it to the patrolman when he arrived. Defendant argues that the evidence which we have outlined above was irrelevant and highly prejudicial. The trial court denied the defendant's motion and further ordered

> that witnesses in this proceeding will be permitted to testify to what they saw and heard but will not be permitted to testify to conclusions and will not be permitted to characterize the actions of the Defendant as running away or fleeing. Further, counsel for Plaintiff and Defendant are ordered not to speak in conclusory manner during the voir dire or opening statement regarding [Defendant] running away or fleeing.

The evidence indicates that defendant, as did the truck drivers, saw or should have seen the wreck immediately behind him, and that defendant, after having been informed of the accident by the truck drivers, and having reason to believe that his slow speed caused the wreck, left the scene of the accident, in the words of the plaintiff, "as fast as his puttering car could take him."

Evidence that a defendant failed to stop his automobile after having been involved in a collision is some evidence of negligence. *Edwards v. Cross*, 233 N.C. 354, 356, 64 S.E. 2d 6, 7 (1951). In the *Cross* case, the plaintiff was struck by an automobile and seriously injured. Circumstantial evidence suggested that defendant's

automobile struck the plaintiff. The defendant did not stop his automobile at the scene of the collision and was nervous when questioned about the occurrence. The *Cross* Court said that the defendant's "immediate flight from the scene of the injury . . . affords sufficient evidence of conscious wrong, or dereliction on his part, to warrant the jury in so concluding." *Id.* at 356, 64 S.E. 2d at 7. In this case, we believe the trial court followed the applicable principles of law and properly instructed the witnesses to testify about facts, not conclusions.

[4]   B. On direct examination, Patrolman George testified, over objection, that the minimum speed on an interstate highway, where posted, is forty (40) miles per hour. Patrolman George did not testify about a posted minimum speed on I-85 and, consequently, did not indicate where a sign indicating a minimum speed was located in relation to the scene of the accident. William Baucom, one of the truck drivers, was allowed to testify, over objection, that the posted minimum speed limit on I-85 is forty (40) miles per hour.

G.S. 20-141(c), which sets a minimum speed restriction of forty (40) miles per hour in a speed zone of fifty-five (55) miles per hour upon the interstate highway system, states that "[t]hese minimum speeds shall be effective only when appropriate signs are posted indicating a minimum speed." Consequently, defendant argues that since there is no evidence of a posted sign anywhere near the accident, the opinion testimony as to the minimum posted speed or the minimum speed where posted is irrelevant and inadmissible. In support of its contention, the defendant cites *Hensley v. Wallen*, 257 N.C. 675, 127 S.E. 2d 277 (1962). We believe *Hensley* is distinguishable, and we reject defendant's contention.

In *Hensley*, the jury was concerned with whether the collision occurred in a business, residential, or unposted speed district. In the case at bar, the collision clearly occurred on an interstate highway. In *Hensley*, the trial court on three separate occasions referred to a "posted" speed even though plaintiff never testified about a posted speed, and the trial court further instructed the jury on driving in excess of the posted speed limit as a grounds for negligence. The court in the case *sub judice* did not refer to any minimum speed, posted or otherwise, in his instructions to the jury.

In addition to finding *Hensley* distinguishable, we find no prejudicial error in the trial court's decision to admit the testimony to which defendant objected in this case. First, assuming that the question to Patrolman George, "And what is the minimum speed on an interstate highway?" was technically improperly phrased, the defect in the question was cured when Baucom later testified that the posted minimum speed on I-85 was forty (40) miles per hour. Viewing Baucom's direct and cross examination testimony in context, we find that his testimony concerning the posted minimum speed relates to the area of the accident. Second, defendant's admission to Patrolman George that he was travelling at approximately thirty (30) miles per hour to forty (40) miles per hour because of mechanical difficulty as he travelled from Raleigh to Greensboro, lends credence to our contextual reading of the record. Since the trial court did not charge on the minimum speed statute, since there was evidence of defendant's slow speed that ranged from six (6) miles per hour to forty (40) miles per hour, and since there was competent evidence of posted minimum and maximum speeds, the trial court properly denied defendant's conditional motion for a new trial on this assignment of error.

[5] C. The defendant contends that the following testimony of Ronald Staton, the third truck driver, provides sufficient evidence to justify an instruction on the duty of a motorist to determine that a movement can be made in safety before turning from a direct line of travel and that the trial court erred in failing to so instruct:

> I could see what the Pinto did after the truck in front of it pulled over to the left-hand lane. After the tractor in front of the Pinto pulled over, the Pinto noticed what was happening. I guess she had no CB or something. She noticed that the tractor was moving over to avoid this slow moving car. So she started moving, she noticed another tractor that had pulled over beside her in the left-hand lane. She hadn't noticed that tractor. When she started to pull over and noticed the truck there, by then she was at the tail end of the other tractor-trailer truck. She had to swerve back in and she was still gaining up on the slow moving car. So she grabbed her brakes and started back into the left-hand lane again to try to cut in between me and the truck. I guess she was trying to

find any way out there at the time. I was braking my speed as fast as I could and getting over as far as I could, but I couldn't hit the dirt not being loaded and then the mush. It hit the mushy median strip and that's when the collision happened.

The Pinto hit my truck. I thought I saw the car hit the second truck, the truck that was passing. I thought I saw it hit it, but they say it didn't. The way I saw it, the Pinto hit the back tires of the truck that was passing. She swerved back in when the tires put her in a little of a spin. She had her brakes locked. Then she tried to cut back over again to avoid the Toyota and she just cut in right in front of my right-hand wheel. There was nowhere for me to go except for my front end to try to go over her front end.

. . . .

After truck number 1 got out into the left-hand lane the Pinto started out into the left-hand lane too. It did not make a movement right behind truck number 1. It sort of waited to find out why the truck moved over before it moved over. But after truck number 1 got over into the left-hand lane, the Pinto sat back there for awhile, I guess to find out why he had moved over. When she saw what was happening she started to move over. At that point, the truck that had passed me was up passing her. Her car was around by the back tandem on his trailer, when she started over. I was already over in the left-hand lane. I hit my brakes then. I don't know whether she hit her tires or not. It looked like she might have, but I don't know whether she did or not. It looked like she hit the tires the first time she started into the left-hand lane. Then she came back into the right-hand lane and she was in a swerve then. She had her brakes or something had locked because she started to skid. She was in a swerve and then she took it back into the left-hand lane again and that is when she hit me.

Two things seem readily apparent from Staton's testimony: (1) Plaintiff started moving to the left when "she saw what was happening," but moved back to the right when she became aware of a truck that was passing her; and (2) that plaintiff's second

movement left and first movement entirely into the left hand lane was involuntary in nature, prompted solely by her emergency braking, caused by defendant's slow speed in plaintiff's lane of travel. On these facts, the trial court's refusal to give the requested instruction was not error.

D. Finally, defendant contends that two of the trial court's evidentiary rulings contributed to the $50,000.00 jury award, which defendant contends is excessive. First, over objection, plaintiff's doctor was allowed to testify that plaintiff had a 20%-25% disability of the arm. Defendant's sole argument is that the opinion testimony of the medical expert should be in terms of permanent physical impairment rather than in terms of a disability. We summarily reject this argument.

Second, defendant contends the trial court committed error by not allowing defendant to do more than question witnesses and introduce evidence regarding whether the plaintiff wore a seat belt at the time of the accident. In *Miller v. Miller*, 273 N.C. 228, 160 S.E. 2d 65 (1968), our Supreme Court said the failure to wear a seat belt does not constitute negligence *per se*. We summarily reject this argument.

On defendant's appeal, we find no error.

On plaintiff's appeal, we reverse the trial court's order granting defendant's motion for judgment notwithstanding the verdict and remand this case for entry of judgment on plaintiff's jury verdict against defendant.

Affirmed in part and reversed in part.

Judge HILL concurs.

Judge HEDRICK concurs in part and dissents in part.

Judge HEDRICK concurring in part and dissenting in part.

I agree with the majority that the trial court erred in entering a judgment for the defendant notwithstanding the verdict; however, I also believe the trial court erred in not instructing the jury on the duty of a driver to determine if a safe movement could be made before turning his vehicle from a direct line of traf-

fic. G.S. § 20-154(a). The evidence, in my opinion, clearly requires such an instruction. While the evidence tends to show that defendant's negligence was one of the proximate causes of the collision, the evidence also tends to show that plaintiff's failure to see that her turn to the left could be done in safety was also a proximate cause of the collision.

I vote to remand the case to the superior court for a new trial on all issues.