Pinkston v. Connor

JOHNNY E. PINKSTON v. JAMES EDWARD CONNOR

No. 8222SC298

(Filed 6 September 1983)

**Municipal Corporations § 15— tree blocking street—city employee struck by automobile—no contributory negligence**

    In an action by plaintiff, a city street maintenance employee, to recover for injuries received when he was struck by defendant's automobile while sawing up a large tree which had fallen and was blocking three-fourths of the street on a cold and rainy night, the evidence was insufficient for the jury to find that plaintiff was contributorily negligent (1) in relying on the headlights of two vehicles shining on the fallen tree to warn approaching motorists rather than obtaining portable barricades from the city garage and placing them around the fallen tree; (2) in leaving the headlights of one of the vehicles illuminating the tree on bright; or (3) in failing to look in the direction of and to see defendant's approaching vehicle until an instant before it hit him.

    Judge WEBB dissenting.

APPEAL by defendant from *Mills, Judge.* Judgment entered 9 December 1981 in Superior Court, IREDELL County. Heard in the Court of Appeals 9 February 1983.

At trial plaintiff's evidence tended to show that: The night in question had been stormy, ice had formed on trees, but not much on the streets, the temperature was about 30°, and it was drizzling rain around 8 o'clock when plaintiff, a street maintenance foreman employed by the Town of Mooresville, received instructions by telephone to remove a tree that had fallen across Sycamore Street. He telephoned a co-worker, Mike Morrow, to meet him at the tree; and Morrow, in his personal jeep, was at the tree when plaintiff got there in the Town's truck. Sycamore Street at

that point is 32 feet wide, runs north and south, and is relatively straight; the view from the south is unobstructed from where the street intersects with another, near the crest of a little hill about 200 feet away. About 250 feet to the north a street light was burning. The tree, a large cedar, blocked the eastern half of the street and part of the western half; only the westernmost 9 feet of the street was unobstructed. In some places where the limbs were large, the trunk was four feet off the ground and the limbs on top were too high for them to see over. Though flares were not available to them, portable barricades were at the Town garage. After looking at the tree, however, plaintiff and Morrow decided that rather than take time to get and place the barricades on both sides of the tree, it would be better to go ahead and get the tree out of the street as quickly as possible by sawing it up in large chunks and pulling them out of the street. Since Morrow's jeep was on the east curb headed south with its fog lights, flashers, and high beam lights on, thereby illuminating the tree on that side, plaintiff drove his truck around to the other side, headed it north, cut on the four-way blinkers, and left the headlights on, so that side would be illuminated, too. The vehicle lights shining at the tree from both sides enabled them to see while working on and about the tree.

The plaintiff had on a reflective, orange-colored vest, but Morrow did not, since his was at the shop, rather than at home. Plaintiff, standing on the south side of the tree, began sawing limbs off and Morrow dragged them to the curb. During the several minutes that the work continued, four or five cars approached them from the south, three or four of which slowed down or stopped before passing around the western tip of the tree and continuing on their way; but one or two cars, after approaching, stopped, turned around, and went in the opposite direction. Working from the tree stump several feet east of the street, plaintiff had reached the middle of the street when he looked around just before defendant's car hit him. He did not see any headlights. Neither plaintiff nor Morrow were then in the tree, but were standing a few feet south of the tree, trying to unclog plaintiff's chain saw, which had jammed.

Defendant's car skidded about six feet before impact and three feet after impact, and ended up about three feet into the

tree. Both of plaintiff's legs were broken, he was hospitalized for about a month, and unable to work for forty weeks.

Defendant testified that: The headlights of his car were on; in driving north on Sycamore Street, at a speed of about 20-25 miles an hour, upon crossing the hill he saw the lighted vehicles, knew something was in the street, and moved to the left to miss the truck; as he continued on he was blinded by the lights of the jeep, slowed down, but didn't hit his brakes until he was in the tree; upon entering the tree, he knew he had hit somebody, but did not see either workman before impact because they were in the middle of the tree.

The trial judge declined to submit an issue as to either the contributory negligence of the plaintiff or the concurring negligence of the Town of Mooresville. A verdict in favor of the plaintiff for $61,000 was returned and judgment was entered thereon.

*Wardlow, Knox, Knox, Freeman & Scofield, by Charles E. Knox and John S. Freeman, for plaintiff appellee Johnny E. Pinkston.*

*Kluttz, Hamlin, Reamer, Blankenship & Kluttz, by Richard R. Reamer, for defendant appellant James Edward Connor.*

*Pope and Brawley, by William R. Pope, for defendant appellee Town of Mooresville.*

HILL, Judge.

Several of defendant's assignments of error, the only ones requiring discussion, raise or relate to the question whether the trial judge erred in refusing to submit issues as to the contributory negligence of the plaintiff and the concurring negligence of the Town of Mooresville. Essentially, it is just one question, since the only basis upon which the Town might have been at fault, under the circumstances recorded, was through the acts or omissions of the plaintiff, who was Morrow's superior and responsible for getting the tree out of the street and deciding how best to accomplish that. We are of the opinion that no error was committed. Neither brief cites, nor has our research found, any decision of this or any other court which involved circumstances at all similar to those recorded here. Without any precedent to guide

us, we arrived at our decision by evaluating the evidence recorded in accord with those rules of law that seem applicable to it; no unusual occurrence, really, since negligence cases, above all others perhaps, stand on their own bottoms. Nevertheless, the bottom that this negligence case stands on is very unusual, indeed.

As to the guiding principles of law, first of all, of course, too elemental to require citation of authorities, contributory negligence is not to be presumed, but has to be shown by evidence. Whose evidence shows this, whether the defendant's or plaintiff's, does not matter, but evidence tending to show a lack of due care on the plaintiff's part which proximately contributed to his injury there must be before this issue can be submitted to the jury. Next, streets and highways have to be maintained for the safety of the public, and because those who do the maintaining, either on foot or by vehicle, have to devote much of their attention to their work, they are not held to the same degree of care that ordinary pedestrians and motorists are, whose only proper concern is their own safety. *Kellogg v. Thomas*, 244 N.C. 722, 94 S.E. 2d 903 (1956).

This necessary rule has been confirmed, if not enlarged, by two legislative enactments. G.S. 20-175 exempts street workers from its provisions prohibiting persons from standing or loitering in highways or streets for certain purposes; and G.S. 20-168 exempts drivers of state, county, and city vehicles from many rules of the road "[w]hile actually engaged in maintenance or construction work on the highways." Nevertheless, though the degree of care required of highway and street workers when actually performing their duties is justifiably less than that required of others, the common law duty to use due care for their own safety under whatever circumstances they find themselves still abides for them as it does for all others. "The rule is constant while the degree of care which a reasonably prudent man exercises or should exercise varies with the exigencies of the occasion." *Greene v. Meredith*, 264 N.C. 178, 183, 141 S.E. 2d 287, 291 (1965).

Defendant contends that plaintiff was contributorily negligent in several distinct ways. Consideration of these separate contentions will be facilitated if we first consider the core circumstances relating to the incident, rather than the evidence *en*

*masse*, and then consider the additional circumstances, one by one, which defendant contends tended to show that plaintiff was contributorily negligent. The evidence is without conflict that: (1) It was a wild and stormy night; (2) a tree, blown down by the storm, was partially blocking the street; (3) plaintiff, a street maintenance employee of the Town of Mooresville, had just been directed to remove the tree from the street; and (4) plaintiff was in the street in the process of getting the tree out of it when he was hit by defendant's vehicle. Obviously, these circumstances by themselves do not tend to show that plaintiff was contributorily negligent; they merely show that public safety required that the street be cleared of a dangerous obstacle, plaintiff had the duty to clear it, and was in the process of doing his duty, under emergency conditions, when he was hurt. Nor, for that matter, does defendant contend that these circumstances by themselves establish plaintiff's contributory negligence; he relies instead upon various other circumstances, which are likewise undisputed.

The circumstance most vigorously relied upon by defendant as tending to establish plaintiff's contributory negligence is plaintiff's failure to place barricades or flares in the street, so as to warn him and other motorists of his and the tree's presence, before beginning his work. The only evidence about barricades or flares was that: Flares were not available to plaintiff, portable barricades were available "at the shop," and if plaintiff "had had time" he would have gotten them; but since he was at home when called, he went directly to the blocked street, appraised the situation, and decided that the best course was to get the tree out of the street as quickly as possible, rather than go, get and place the barricades. If getting the barricades first was a wiser and safer alternative—not just for the plaintiff, but the public, as well, a necessary consideration, since his purpose in being there in the first place was to remove a hazard from a public road—the evidence does not show it. There was no evidence as to the distance from the plaintiff's house to the shop, or from the shop to the accident scene; nor was there any evidence as to how long it would have taken to get the barricades and place them, and thus how much longer the tree would have remained an unlighted hazard to travel, as it then was. Without some such information, the jury would have had no basis for deciding that it was negligence not to get the barricades first and could have only conjectured or sur-

mised that that was the case, which our law does not permit. *Poovey v. International Sugar Feed Number Two Co.*, 191 N.C. 722, 133 S.E. 12 (1926).

But, apart from that, failing to get the barricades first would not be negligence in any event if plaintiff warned the public of his and the obstacle's presence in some equally efficacious way — barricades and flares not being the only means by which motorists can be warned that something is in or wrong with a street or highway. The evidence shows that placing the two vehicles with their headlights shining at the tree from opposite directions did, in fact, warn the motoring public and defendant that something was amiss equally as well as barricades or flares would have. All other motorists that used that part of Sycamore Street during the time involved, upon seeing the lighted vehicles, either turned back or slowed down and went around the tree in safety, and defendant himself testified on direct examination, not cross, that: "After I got over the hill I saw a truck parked on the side of the road and a jeep was parked in front of the truck. I knew something was in the road . . . ." He could have learned no more than that from a barricade in the street. If the message of the lighted vehicles had been less informative, this contention would have more substance — but then it would be a different case from the one presented.

Leaving the headlights of the vehicle facing him on bright is also pointed to by defendant as a violation of G.S. 20-161.1, which prohibits bright lights on standing vehicles at night. But that statute, by virtue of G.S. 20-168(b), does not apply to street maintenance workers actually performing their duties, as plaintiff and his helper were doing here. Though not a violation of the statute, if placing the vehicle where it was and leaving the headlights on bright was inappropriate or unnecessary under the circumstances, it would be evidence of contributory negligence. But no evidence that plaintiff's course was unnecessary or inappropriate is recorded. Light was certainly needed; not just to warn approaching motorists of the hazardous obstacle and the workmen's presence in the street, but also for their work, since nobody can be expected to saw a tree up in the dark. If any other light was available to plaintiff, or if the work on the tree could have safely been done or the public adequately warned with the vehicle lights on low beam, or with the vehicle placed at a dif-

ferent angle, the evidence does not show it. The only possible evidence on this point is defendant's testimony that he was blinded by the lights; not, however, when he first came in sight about 200 feet away and noticed both lighted vehicles and "knew something was in the road," but only after traveling on until he was right on plaintiff and the tree. That, of course, if it tends to show anything, tends to show only that that system of lighting had one undesirable side effect; it does not tend to show that other, better methods of lighting were available to plaintiff and should have been used.

The third evidentiary circumstance relied upon by defendant to establish contributory negligence is that plaintiff admittedly was not looking in the direction defendant's car was coming from, and did not see it until an instant before it hit him. Though this was manifestly an inadequate lookout for an ordinary pedestrian, under the peculiar circumstances of this case, we cannot say that it constituted a failure to use due care. Plaintiff had a power chain saw in his hand, requiring much, if not all, of his attention; he and the area were illuminated by the bright headlights of two vehicles; other motorists that had approached the scene had avoided both him and the tree without difficulty. To hold that under these circumstances failing to notice defendant's approach showed a want of due care would, it seems to us, require the unreasonable and unobtainable of those doing perilous, attention-demanding, emergency work necessary for the safety of the public. Furthermore, the evidence does not indicate that if he had seen defendant's car approaching during the few seconds it was in view, and after it became manifest to him that it was not going to stop or go around the end of the tree, as the other cars had, he could have avoided being hit by it.

As stated, no reported decision involving circumstances similar to those in this case has been found. The case most strongly relied upon by defendant, *Northwestern Distributors, Inc. v. N. C. Department of Transportation*, 41 N.C. App. 548, 255 S.E. 2d 203, *cert. denied*, 298 N.C. 567, 261 S.E. 2d 123 (1979), is illustrative of our lack of a precedent. In that case plaintiff's truck was damaged when, after passing a sharp curve in the highway, the driver, with no advance warning, came upon defendant's truck in the middle of the road dumping dirt; no signs were posted, no barricades were placed, and no flagman was employed. The hold-

ing was that notwithstanding that the defendant's workmen were engaged in repairing the highway, the evidence showed a breach of their common law duty to use due care. Though that ruling is clearly correct, it is no analogy for us to follow here because the circumstances of the two cases are different in every material respect. In that case the hazard was created by the party that had the duty to place warning devices; in this one, of course, nature created the hazard and plaintiff was trying to remove it. There, no emergency existed, ordinary, routine highway construction work was being done during daylight hours, and defendant not only had plenty of time to place barricades, post flagmen, or do anything else that needed to be done for the safety of the public, but had plenty of employees on hand to do them. Here, on the other hand, on a dark and dangerous night, the motoring public was already in peril from a hazardous obstacle in the street, and plaintiff's job, with one assistant, was to remove it as quickly and expediently as possible. In undertaking to do so, the recorded evidence does not tend to show any failure on his part to use due care commensurate with the exigencies of the situation. "À defendant who asserts plaintiff's contributory negligence as a defense has the burden of proving it, and a contention that certain acts or conduct of the plaintiff constituted contributory negligence should not be submitted to the jury unless there is evidence from which such conduct might reasonably be inferred." *Atkins v. Moye*, 277 N.C. 179, 184, 176 S.E. 2d 789, 793 (1970).

No error.

Judge BECTON concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent. I believe the evidence that the plaintiff did not place warning devices on the street but relied on the headlights of vehicles is sufficient evidence so that the issue of contributory negligence should have been submitted to the jury.